NELLIE RYAN, Plaintiff, v. WM. HUTCHINSON, Judge, Defendant.

Actions: CERTIORARI. Certiorari will not lie unless the inferior tribunal has acted without jurisdiction or illegally, and there is no other plain, speedy and adequate remedy. Errors not illegal or void for lack of jurisdiction must be cured by appeal.

**Same:** EXECUTORS AND ADMINISTRATORS: APPEAL. An executor or administrator has a plain, adequate and speedy remedy by way of appeal from the ruling on objections to his report; he is not entitled to a review of the ruling by certiorari, but upon failure to appeal it becomes a finality.

**Executors and administrators:** CAPACITY TO SUE AND BE SUED. Under the statutes of this state an executor or administrator stands as a representative of the estate; and he need not join the heirs or next of kin in an action brought to protect the interest of the estate, or in the defense of an action against him.

**Same:** SETTLEMENT OF ESTATES: ORDERS: APPEAL: CERTIORARI. Parties interested in an estate who are served with notice of an executors application for discharge are in court and must take notice of all objections filed; and if they fail to appear, or having appeared, fail to appeal from the order of court respecting the disposition of the report the executor represents them, and they are bound by any order or judgment entered and by the failure of the executor to appeal therefrom, and they cannot have the order reviewed by certiorari.

**Same:** ESTATES OF DECEDENTS: ALLOWANCE OF CLAIMS. The allowance of a claim against an estate by the clerk, or by the executor or administrator, is temporary or provisional, and subject to review by the court; it becomes a finality only when allowed by the court itself.

**Same:** INTERMEDIATE REPORTS: DETERMINATION BY COURT: CONCLUSIVE-NESS. Intermediate reports by an executor or administrator are not conclusive, but are subject to correction when the final report is presented; but a final hearing and determination of claims against an estate by the court is conclusive, in the absence of fraud or collusion between the claimant and executor or administrator.

**Same:** APPEAL BY HEIR. An heir to an estate may appeal from an order affecting his interests, either in his own name or that of the executor or administrator.

*Certiorari to Cherokee District Court.*—HON. WM. HUTCHINSON, Judge.

THURSDAY, OCTOBER 23, 1913.

ORIGINAL proceedings in this court to review the action of the district court in passing upon certain objections filed

by W. W. Morrow, Treasurer of State, to the final report of one Campbell, executor of the estate of Patrick F. Ryan, deceased, and to the discharge of the said executor. The trial court sustained the objections, and time was given to file a bill of exceptions. No bill was filed, and the executor did not appeal. Instead, plaintiff herein sued out a writ of certiorari, claiming that the district court was without jurisdiction to hear the objections, and that it acted illegally in making the order it did. Writ dismissed, and order *Affirmed*.

*Wm. Mulvaney*, for plaintiff.

*George Cosson*, Attorney-General, *C. A. Robbins*, Assistant Attorney-General, and *W. P. McCulla*, for defendant.

DEEMER, J.—From the defendants' return to the writ, which must be accepted as correct, we extract the following facts deemed material to the solution of the problems involved:

Patrick F. Ryan died testate some time in the year 1908. His will was executed August 18, 1905, and was duly admitted to probate on March 25, 1908. After directing that all debts be paid, testator bequeathed the sum of $100 to each of two nieces, and the remainder of his estate, of whatever kind or nature, was devised to Ellen Ryan, his sister. This sister goes by the name of Nellie Ryan, and is the plaintiff in this action. Deceased left no direct heirs, but his next kin were Mary Durkee and Ellen Ryan, sisters, and John Ryan, a brother. The two legatees in the will, other than plaintiff, are nieces of the deceased.

Testator left $7,300 in certificates of deposit; and a fractional part of two lots in the city of Cherokee, Iowa; these being his only assets.

Shortly after the probate of the will, which was made in due form, the collateral inheritance appraisers of Cherokee county, after due notice to all parties in interest, appraised the property of the deceased, fixing the value of the real estate

at $1,200 and of the personal property at $7,592 (being the amount of the certificates of deposit, with interest to the date of the appraisement). In the meantime, and on August 13, 1908, plaintiff filed a claim against the estate of the deceased for services as housekeeper for the years 1899 to 1908, inclusive, amounting in the aggregate to $5,750. This claim was allowed to the amount of $5,300 by the executor, subject to the approval of the court, and on the same day the clerk of the district court indorsed an order on the back of the claim, approving the action of the executor in allowing the claim. On the 25th of September of the same year the executor filed a motion, asking the court to enter an order ". . . authorizing him to pay all claims against said estate which have been filed and allowed by your executor and approved by the clerk of this court, and authorizing him to pay the legacies provided for in said last will, there being ample means with which to pay all claims, as shown by the inventory filed herein; all said claims so approved are just and should be paid.'' On the same day this motion was submitted to the court and the following order made thereon: The court finds ". . . that the executor has funds sufficient to pay all claims filed, and all legacies provided for in said will, in full. It is therefore ordered that the said executor be and he is hereby ordered and directed to pay all legacies provided for in the will of deceased, and to pay all just and legal claims against said estate and all costs of administration out of the funds belonging to said estate.'' Thereafter, and on December 4, 1909, the executor filed his final report and petition for discharge. In this report the executor charged himself with the appraised value of the property of the estate, not including interest on the certificates after the appraisement, and credited himself with claims paid amounting to $6,178.25; stated the amount of the inheritance tax to be $130.69; claimed that he had paid the two legacies of $100 each; stated that he had paid an attorney's fees of $50, and reported a balance of $1,233.06 for distribution. He also reported that

from this amount he had paid the two legacies to the nieces, and the balance, $1,033.06, he had paid for Ellen (or Nellie) Ryan to the clerk of the district court. He also stated that while he had paid $130.69 as the inheritance tax to the Treasurer of State, that official had refused to give his receipt therefor, or to accept the same as in full of the amount due. And he asked ". . . that he be discharged from any further responsibility as such, and that such said estate be judicially closed, and that said estate be decreed to have discharged its obligations to the state of Iowa under the collateral inheritance tax law of the state, and to have paid all the inheritance tax due from said estate to the state of Iowa."

Attached to the report was the following statement of account:

Claims Filed against the Estate of Patrick F. Ryan, Deceased, within Six Months.

| | |
|---|---:|
| W. L. E. Appleyard, undertaker..................$ | 135 00 |
| Hacks for funeral............................... | 7 50 |
| John Dogget, digging grave..................... | 5 00 |
| James Wilkie, claim for work.................... | 36 55 |
| Webber & Webber, claim for dental work......... | 4 00 |
| E. Halford, shaving deceased.................... | 3 50 |
| J. H. Sellers, claim for merchandise............. | 33 30 |
| Weart & Lysaght, lumber....................... | 72 60 |
| Nellie Ryan, claim for labor..................... | 5,750 00 |
| Hornibrook & Hornibrook, medical attendance..... | 108 25 |
| Probate fee ................................... | 10 00 |
| Appraiser's fee, inheritance tax................. | 11 30 |
| Notice of proof of will.......................... | 4 00 |
| Witness fee ................................... | 1 35 |
| Monument for deceased......................... | 270 00 |
| Per cent. for administration..................... | 175 90 |
| Total amount of claims .................$ | 6,628 25 |

All of the above claims were allowed at their face value, except the claims of Nellie Ryan, which was allowed in the sum of $5,300—

Making a total of claims allowed against said estate
of .........................................$6,178 25
Total appraised value of estate.................. 8,792 00
Total claims allowed and paid.................... 6,178 25

Balance remaining to be taxed...................$2,613 75
Inheritance tax on above........................ 130 69

Remaining after payment of tax.................$2,483 06
Real estate ...................................... 1,200 00

Cash .........................................$1,283 06
Paid attorney's fees............................. 50 00

Balance cash for distribution...................$1,233 06

Due notice of the filing of this report, and that the same
would come on for hearing in the district court on January
4, 1910, was given to all interested parties, and in due season
the Treasurer of State appeared and filed the following,
among other, objections: ''Objector admits that $130.69 was
remitted to the State Treasurer, but said sum is held by the
Treasurer of State subject to the order of the administrator
of said estate. Your objector further asks that the allowance
of the claim of Nellie Ryan be set aside upon the ground
that it is fraudulent, in that it is filed for the sole purpose
of diminishing or defeating the collateral inheritance tax;
upon the grounds that it is excessive; that during all of the
time of her services, if any services were rendered, the said
Nellie Ryan received compensation in whole or in part as a
member of the family of the deceased; that the bequest, under
the will of Patrick F. Ryan, was in accordance with an under-
standing between the decedent and the said Nellie Ryan; that
she was to receive compensation in that manner; that she is
not entitled to file a claim against the estate, except that she
renounce the bequest and refuse to accept under the terms
of the will. Your objector further asks that the allowance be
set aside for the further reason that the Treasurer of State

had no notice or knowledge of such claim at the time of the filing of said claim, that the executor has never filed with the Treasurer of State the report required by law, nor has the clerk of court filed with the Treasurer of State the report required by law; that the Treasurer of State was an interested party on behalf of said state of Iowa, and should have had notice of the filing of said claim. Wherefore your objector asks that the claim be set aside and subjected to the collateral inheritance as by law provided.'' The executor filed a motion to strike these objections for the reason that ''said objections filed as aforesaid were not filed until long after the allowance of all claims by the executor and by the court, and until long after said claims were ordered paid, and were in fact paid, and because all inheritance tax has been fully paid.'' After the testimony was taken, this motion was overruled, and the objections of the treasurer to the final report were sustained. The executor excepted, and was given ninety days within which to file a bill of exceptions. This order was entered on January 19, 1911, and no bill of exceptions was ever filed and no appeal taken from the orders entered.

Although plaintiff, Ellen or Nellie Ryan, was duly served with notice of the filing of the final report of the executor, she entered no formal appearance, for the reason, no doubt, that she was content therewith, but was present in court and was examined by counsel for the Treasurer of State in support of his objections, and cross-examined by the attorney for the executor, who is her present attorney of record. She filed nothing in response to the objections of the State Treasurer, but, as we have said, was present and gave testimony upon the hearing. She testified, on her examination as a witness, as follows: ''It was agreed that if I would stay and work for my brother that I should have all his property as my wages, that was the understanding, that if I would stay with him till his death he would pay me with his property, and I certainly did stay and keep house for him until he died. He left a will, by the terms of which he gave me all his prop-

erty after the payment of his debts, except $200. The agreement with my brother was that I should have all his property for working for him. I was to have all the property for working for him. (Objector offers in evidence the will of Patrick F. Ryan.)'' On cross-examination by the attorney for the executor she said: ''He was to give me the farm for the services that I performed for him. He did not deed me the farm, and he did not deed me any property. He was to deed the farm to me for my wages. I worked for him on the farm for twenty-five years, and worked for him six years after he came to town, up to the time of his death. And I worked for him all that time.'' ''I did not know that my brother made a will until after he died and the will was filed for probate. He never told me of the will or its provisions.'' And on recross-examinations, as follows: ''I worked on the farm down there in 1885, 1886, 1887, 1888, and 1889, and I worked there until an agreement that I was to have the property for my pay; that is, my brother's property. Under that agreement I stayed and did chores, milked cows, fed hogs, and did anything that there was to do.''

This is the entire record in so far as material to the issues presented, and it is to be specially noted, first, that neither the executor nor the plaintiff has appealed from the order of which complaint is made, and that as to the executor, at least, this order is a finality. It is further to be observed that while the plaintiff's claim against the estate which was allowed by the executor and approved by the clerk has been paid to plaintiff, there is yet in the hands of the clerk of the district court, something more than $1,000, which, according to the executors' report, is to be paid to plaintiff as the residuary legatee. It should also be stated, in order that the record may be complete, that the two other bequests in the will are also in the hands of the clerk, and that neither has been paid to the legatees. This action of certiorari was commenced in this court on the 4th day of January, 1912, and it is bottomed on the theory that the trial court had no jurisdic-

tion to enter the order complained of, and that in any event
it acted in excess of its jurisdiction, and that there was no
other plain, speedy, and adequate remedy at law whereby the
matter complained of might be cured.

The exact claims made for plaintiff in her petition for the
writ are as follows:

That the claim of this plaintiff had been duly allowed by
the said executor and his allowances approved by the district
court on the 13th day of August, 1908, and because the said
district court had at the term of court following said allow-
ance ordered the said claim paid, which said last order was
entered during the September, A. D. 1908, term of the Chero-
kee district court and on the 25th day of September, A. D.
1908, and because said claim was fully paid as allowed within
six months after the death of said decedent, and the defend-
ant herein had no right to interfere with said orders or to
disturb them upon objections and motions filed on the 18th
day of December, A. D. 1909, more than one year after the
payment of said claim by the executor, and the doing of all of
which was in excess of the jurisdiction of the defendant
herein.   That if the order of said defendant is allowed to
stand this plaintiff will be compelled to pay about $300 of a
collateral inheritance tax on moneys actually owing from said
estate to this plaintiff, and she will be compelled to pay such
tax on that which she did not inherit from said estate.   That
the time for taking an appeal by said executor has expired,
and the said executor has taken no appeal.   That this plain-
tiff has no speedy, plain, and adequate remedy for the injury
done her by said illegal act of the said defendant, except by
certiorari.

It is well understood that certiorari will not lie against
a judicial tribunal, unless that tribunal has acted without
jurisdiction or illegally, and there is no other plain, speedy,
1. Actions: cer-   and adequate remedy.   Code, section 4154.
   tiorari.          The term "illegally" means something differ-
ent from erroneously, and is generally interpreted as in
excess of jurisdiction.   Errors not illegal or void because of
lack of jurisdiction must be cured by appeal.   *State v. Roney,*

37 Iowa, 30; *Ransom v. Cummins,* 66 Iowa, 137; *State v. Schmidtz,* 65 Iowa, 556; *Ind. District v. District Court,* 48 Iowa, 182; *Abney v. Clark,* 87 Iowa, 727; *Hawkeye Co. v. Duffie,* 67 Iowa, 175; *Sunberg v. Dist. Court,* 61 Iowa, 597; *Fagg v. Parker,* 11 Iowa, 18; *O'Hare v. Hempstead,* 21 Iowa, 33.

In so far as the executor is concerned, it is very clear that he had a plain, adequate, and speedy remedy by appeal, and as he did not avail himself thereof, he could not have sued

2. SAME: executors and administrators: appeal.

out a writ of certiorari. The order made by the district court, of which complaint is made, is as to him, therefore, a finality, and the objections to his report must be treated as good. If, at the hearing of the objections to the report, he stood as a representative of the claimants whose bills against the estate were paid by him, they too are concluded by his failure to appeal. If he did not stand for them, by representation, the question then arises, May they maintain an action of certiorari? If so, the action is governed by the same principles applicable to other certiorari actions, save that, if they were not represented by the executor on the hearing of the objections, and were not parties to the proceeding, they would have no right of appeal, for they, in such circumstances, would be strangers to the proceedings.

Our Code expressly recognizes that an executor or administrator is a representative of the estate, and stands in law on an equality with a trustee of an express trust (Code, section 3459), and he need not join the heirs or

3. EXECUTORS AND ADMINISTRATORS: capacity to sue and be sued.

next of kin with him in any action brought to protect the interests of the estate (*Rhodes v. Stout,* 26 Iowa, 313). And the same rule obtains where an administrator or executor is made a party defendant. *Powell v. Spaulding,* 3 G. Greene, 443.

In *Willitt v. Malli,* 65 Iowa, 675, the doctrine of representation is expressly recognized. The following sections of

what may be called the Probate Code also have relation to this question.

A part of section 3394 reads as follows:

. . . And from time to time, as may be required by the court, he (the executor) shall render further accounts until the estate is finally settled, which final settlement shall be made within three years, unless otherwise ordered by the court. Such account shall embrace all matters directed by the court and pertinent to the subject.

(Section 3398 reads:) Mistakes in settlements may be corrected in the probate court at any time before his final settlement and discharge, and after that time by equitable proceedings, on showing such grounds as will justify the interference of the court.

(Section 3399 is as follows:) Any person interested in the estate may attend upon the settlements of his accounts and contest the same. Accounts settled in the absence of any person adversely interested, and without notice to him, may be opened within three months on his application.

(Section 3401 reads as follows:) If judgment is rendered against an executor or administrator for costs in any action prosecuted or defended by him in that capacity, execution shall be awarded against him as for his own debt, if it appears to the court that such action was prosecuted or defended without reasonable cause. In other cases, the execution shall be awarded against him in his representative capacity only.

(And section 3422 provides that:) Unless notice be waived in writing, no administrator, executor, guardian or trustee shall be discharged from further duty or responsibility upon final settlement, until notice of the application shall have been served upon all persons interested as required for the commencement of a civil action, unless a different service be ordered by the court or judge, which order may be made before or after filing the final report.

A reading of these sections in connection with the others found in the Code of General Procedure indicates that as to

many things the administrator or executor acts in a repre-
sentative capacity, but that in the matter of
final accounting, all parties interested must be
given notice, else they will not be bound by an
order of settlement and discharge. If given
proper notice of the filing of the report and of the application
for discharge, they are in court, and must take notice of all
objections filed by any of the parties interested. These objec-
tions are lodged against the report of the administrator or
executor as such, and it is not necessary to notify any of the
other parties in interest of the filing of these objections, for
they are brought into court by reason of the notices to them,
and must take notice of any proper objections filed. If they
do not appear in person, the executor or administrator, by
representation, stands for them, and they are bound by any
order or judgment rendered on the hearing. To require
notice to all parties in interest whenever objections are filed
to the final report of an executor or administrator would
result in confusion and undue delay in the settlement of
accounts. The statute does not require such a notice, and if
the one required is given, the probate court has full jurisdic-
tion to hear all proper objections to the executor's final report,
and whatever the order, it is binding upon all persons who
had notice of the time of hearing. The final result of this
discussion is a holding that plaintiff was not entitled to any
other notice than she had, that for the purposes of an appeal,
the executor represented her and all other parties in interest,
and that if the order entered was erroneous or even illegal,
the proper remedy was an appeal by the executor. This he
did not take, and the order and judgment as to him became
conclusive, unless entirely void for want of jurisdiction, upon
the creditors, heirs, and legatees, whom he represents.

If any other rule be adopted, it would result in this:
That the allowance of plaintiff's claim by the executor of the
estate, the approval thereof by the clerk of the courts, and
the general order of the court to the executor to pay all just

4. SAME: settle-
ment of es-
tates: orders:
appeal: cer-
tiorari.

and legal claims against the estate would be of no binding force and effect, because the Treasurer of State, an interested party, had no notice of the claim, and is not bound by anything which was done with reference thereto. *McLeary v. Doran,* 79 Iowa, 210, lends support to these views.

In *O'Hare v. Hempstead,* 21 Iowa, 33, the administrator brought an action in certiorari to review the action of a county judge who then had jurisdiction of probate matters, to review his actions in approving the final settlement of estate. Relief was denied because the remedy for the executor was by appeal, and this in face of the fact that as to some of the heirs they were not bound by the final report of the administrator. In that case it was said:

But the claim is that the county judge *acted illegally,* and that plaintiff had no other plain, speedy, and adequate remedy. Without adverting to the first part of this inquiry, we are clear that plaintiff might have appealed from the action of the county court in refusing to correct this mistake, and that in this her remedy was plain, speedy, and adequate. *Fagg v. Parker,* 11 Iowa, 18; *State of Iowa v. Wilson,* 12 Iowa, 424. This case is certainly not as strong for plaintiff as those cited, and yet in both of those it was held that the remedy was by appeal. That the party has lost this remedy by his own laches can make no difference. *Fagg v. Parker, supra,* directly in point. And the propriety of remitting the party to this remedy is well illustrated by this case. The heir, Mrs. Strain, denies the mistake alleged, but claims that a mistake was made against her to the amount of $2,000. The finding of the county court that a mistake was made, as claimed by the petitioner, ought not to conclude either party. The matter, when heard, ought to be examined *de novo.* And the law contemplates an appeal from all decisions or decrees of a county court on the merits of any matter affecting the rights or interests of individuals, and a full hearing of the same in the district court. Revision, section 267. A party should not be allowed to select some erroneous ruling and have this reviewed by certiorari, when his remedy, if he is aggrieved, is adequate and plain by appeal, a remedy which

gives a hearing upon the whole merits, and the very relief, if any, to which he is entitled.

These views in the opinion of the writer and some other members of the court dispose of the case for the reason, first, that the remedy was an appeal by the executor, and, second, that the court below was not without jurisdiction; for all the requisite notices were given, and the trial court had the right and authority to pass upon all objections filed to the final report of the executor, and although he may have erred, the writ of certiorari will not lie to review his action. Moreover, as the executor has not appealed and has not joined in this action, the order on the hearing of objections to the final report is a finality in so far as the executor is concerned, and as by representation he stands for the other creditors and the heirs, neither a creditor nor an heir may question the matter by the extraordinary remedy of certiorari.

There is, however, another view which reaches the same result. Plaintiff's claim was allowed by the executor, and this was approved by the clerk. The record, however, does not show any allowance by the court itself. The only order made by the court, appearing on the record, with reference thereto, is a finding that there were sufficient assets to pay all claims filed and all legacies, and the executor was ordered to pay all legacies and all just and legal claims against the estate and all costs of administration. No reference was made to any specific claims, and nothing was said about any claims which had been allowed by the executor and approved by the clerk.

5. SAME: estates of decedents: allowance of claims.

Sections 250 and 251 of the Code read as follows:

Sec. 250. The clerk of the district court shall have and exercise within his county all the powers and jurisdiction of the court and of the judge thereof, in the following matters: First. The appointment, when not contested, of resident administrators, executors, and guardians of minors, and the approval of any and all bonds given by administrators, executors, trustees and guardians in the discharge of their several

trusts; second, the examination and approval of all inter-
mediate or interlocutory accounts or reports of administra-
tors, executors and guardians; third, the making of all neces-
sary orders in relation to the personal effects of a deceased
person, where no objection is filed, and perform all other acts
within his jurisdiction, as provided for in this Code.

Sec. 251.   Any person aggrieved by any order made or
entered by the clerk, under the powers conferred in the last
section, may have the same reviewed in court, on motion filed
at the next term and not afterwards, unless upon good cause
shown within one year, and upon such notice as the court or a
judge thereof may prescribe.   Upon the filing of such motion,
the clerk shall place the cause or proceeding on the docket
without additional docket fee, and the matter shall stand for
hearing or trial *de novo* in open court.

Sections 3338 and 3340, before the recent amendment by
the Thirty-Fifth General Assembly, chapter 277, read as
follows:

Sec. 3338.   Claims against the estate shall be clearly
stated, and, if found upon a written instrument, the same or
a copy thereof and of all indorsements thereon shall be
attached as a part of the statement, and if upon account, an
itemized copy shall be attached, showing the balance; which
statement must be sworn to and filed with the clerk of the
district court, and ten days' notice of the hearing thereof—
which shall be at some regular term of the court—accom-
panied by a copy of the claim, shall be served on one of the
executors or administrators in the manner required for com-
mencing ordinary actions, unless the same has been approved
by the executor or administrator, in which case it may be
allowed by the clerk, without notice, and so entered upon the
probate calendar.

Sec. 3340.   All claims filed, and not expressly admitted
in writing signed by the executor or administrator, with the
approbation of the court, shall be considered as denied, with-
out any pleading on behalf of the estate, but special defenses
must be pleaded.   The burden of proving that a claim is
unpaid shall not be placed upon the party filing a claim
against the estate; but the executor or administrator may, on
the trial of said cause, subject the claimant to an examination

on the question of payment, but the estate shall not be concluded or bound thereby.

(Section 3395 also provides that:) He may be examined under oath by the court upon any matter relating to his accounts, when the vouchers and proofs in relation thereto are not sufficiently full and satisfactory, and must account for all the property inventoried at the price at which it was appraised, as well as for all other property coming into his hands belonging to the estate.

We have heretofore quoted the sections with reference to the final report of an executor, the notice to be served with reference thereto, and the hearing on final settlement. It appears from these sections that the allowance by the clerk is a temporary or provisional one, subject to review by the court, that the allowance by the executor is not final, and that finality cannot be predicated upon anything short of an allowance by the court itself, under section 3341 of the Code. See, also, *McLeary v. Doran,* 79 Iowa, 210; *Dessaint v. Foster,* 72 Iowa, 639; *Hendron v. Kinner,* 110 Iowa, 544.

Our cases universally hold that decisions on intermediate reports are not conclusive so as to prevent the correction of mistakes therein, when the final report is presented. See *Rabbett v. Connolly,* 153 Iowa, 607, which is closely in point, and *In re Estate of Smith,* 133 Iowa, 142; *Dorris v. Miller,* 105 Iowa, 564; *In re Manning's Estate,* 134 Iowa, 165; *In re Sawyer,* 124 Iowa, 485; *Clark v. Sayre,* 122 Iowa, 591; *Powers v. Crandall,* 136 Iowa, 659; *Clark v. Cress,* 20 Iowa, 50; *Estate of Holderbaum,* 82 Iowa, 69.

6. SAME: intermediate reports: determination by court: conclusiveness.

Of course if there has been a final hearing on a claim under sections 3340 and 3341 of the Code, it is conclusive in the absence of fraud or collusion between the claimant and the executor. *McLeary v. Doran,* 79 Iowa, 210. But this is not true as to intermediate orders by the clerk or an allowance by an executor. *Ashton v. Mills,* 49 Iowa, 564; *In re Douglas' Estate,* 140 Iowa, 603; *In re Davenport,* 85 Iowa, 293; *Tucker v. Stewart,* 121 Iowa, 714; *Ordway v. Phelps,* 45 Iowa, 279.

The point to all this discussion is to show that the trial court had jurisdiction of the matter of the final settlement of the executor; that it was expressly authorized to pass upon any objection filed to the final report; that there was, according to the record, no binding and final judgment on the claim, which was never expressly allowed by the court, and that while the court may have erred in making an order setting aside the allowance of the claim, the error was not in excess of jurisdiction, and that the remedy of certiorari will not lie. Evidently the trial court was of opinion that under the testimony plaintiff received practically all of testator's property under the will in fulfillment of his promise to give it to her in compensation for her services, and that she should have so treated it, rather than to take thereunder and at the same time file a claim for services rendered, which exhausted the greater part of the estate. The effect of the allowance of this claim would be to deprive the state of the larger part of the collateral inheritance tax which would be due it. We shall not pass upon the merits of this view; for upon certiorari that question does not arise. Indeed that is one of the reasons for not considering the matter complained of on certiorari. The trial court had the right to decide the matter of objections to the final report, and although it made a wrong decision—one which would be reversed upon appeal—yet the order cannot be called in question by a writ of certiorari.

Since writing the first branch of this opinion, it has been discovered that the heirs of an estate may prosecute an appeal from an order in probate affecting their interests, either in the name of the executor or in their own. See *Burns v. Keas*, 20 Iowa, 16. This decision was rendered under a statute which authorized one to apply to the district court for permission to appeal, and is cited in order that nothing bearing on the case may appear to have been overlooked.

7. SAME: appeal by heir.

The writ must be dismissed, and the order of the district court *Affirmed*.