DAN H. GOODMAN, Appellee, v. F. F. BAUER, Administrator, et al, Appellants.

No. 44269.

SEPTEMBER 27, 1938.

Wallace & Claypool, for appellee.

Swift & Swift, Oral S. Swift, and Carr, Cox, Evans & Riley, for appellants.

DONEGAN, J.—John H. Krickenberger died intestate March 8, 1930, a resident of Iowa county, Iowa, leaving as his only

heir his sister, Mary M. Krickenberger, whose name also appears in the record as Mary Krickenberger and Maggie V. Krickenberger. For convenience she will be referred to hereafter as Mary M. Krickenberger. At the time of his death John H. Krickenberger was the owner of approximately 40 acres of land in Iowa county, on which he and his sister lived, and of personal property, including money in bank and indebtedness owing to him by Dan H. Goodman. Dan H. Goodman was a neighbor of the Krickenbergers, who had rented and farmed the Krickenberger land before John H. Krickenberger died and continued to do so until the death of Mary M. Krickenberger. On March 11, 1930, said Dan H. Goodman was appointed administrator of the estate of John H. Krickenberger and duly qualified.

On April 29, 1930, Mary M. Krickenberger executed an instrument in writing called ''Declaration and Deed of Trust'' which recited that she thereby granted, bargained, sold, and conveyed to Dan H. Goodman the land (fully described) coming to her by descent from the estate of John H. Krickenberger, deceased, all personal property owned by her in her own right, and all personal property coming to her out of the estate of her said deceased brother, subject to the condition that said Goodman hold all said property, both real and personal, in trust, for the following uses and benefits: That said Goodman pay Mary M. Krickenberger enough of the proceeds or assets ''as may be required by the said Mary M. Krickenberger for her support, keep, maintenance, medical attention, hospital bills, traveling expenses and other necessaries of life as may be required by the said Mary M. Krickenberger''; that upon the death of Mary M. Krickenberger said Goodman pay her funeral expenses and for a suitable marker at the grave; and that he pay $100 to the trustees of Pleasant Grove Church of English township, Iowa county, Iowa, and a like amount of $100 to Mrs. Bertha Barnes. ''Subject to the conditions and provisions above made, the said Dan H. Goodman as such trustee, shall upon the death of Mary M. Krickenberger, convey, set over and assign in fee simple all of the assets in said trust then remaining by trustee's deed or bill of sale to Dan H. Goodman, to have and hold in fee simple without restriction or reservation whatsoever.'' The instrument further provided that the trust should be irrevocable, should be under the direct control

of the district court of Iowa county, and that Goodman give bond as required by law and ,order of court and make such reports therein as contemplated by statute. Subjoined to the declaration and deed of trust was a form of acceptance of the trust, which was signed by Goodman on the same day, April 29, 1930, and both the execution of the declaration and deed of trust and of the acceptance of the trust were acknowledged in due form.

Goodman, as administrator, paid the debts and claims against the estate of John H. Krickenberger, deceased, and on January 9, 1932, his final report as administrator was approved and said estate closed. Goodman, as trustee, also performed the duties connected with the declaration and deed of trust, and following the death of Mary M. Krickenberger, which occurred on December 11, 1933, he paid her funeral expenses, paid for a marker on the grave, paid $100 to the trustees of the Pleasant Grove Church of English township, and paid $100 to Bertha Barnes, as provided in said declaration and deed of trust. Following the death of Mary M. Krickenberger and the payment of the sums above referred to, Sara C. Minor, on October 7, 1935, filed a petition asking for the appointment of F. F. Bauer as administrator of the estate of Mary M. Krickenberger, deceased, and on the same day letters were issued and said F. F. Bauer qualified as such administrator.

Dan H. Goodman, as trustee, on August 7, 1936, executed a deed to Dan H. Goodman individually for the 40 acres of land described in the declaration and deed of trust. On the same day Goodman, as trustee, also executed a bill of sale and assignment to Dan H. Goodman individually of a certain promissory note dated March 30, 1932, due five years after date, payable to the order of Dan H. Goodman, trustee, and signed by Dan H. Goodman individually, said note having been in the original amount of $2,932.47, on which there was remaining an unpaid principal of $1,528.22. Both the deed and bill of sale were duly acknowledged and stated that they were executed pursuant to authority vested in the trustee by the declaration and deed of trust executed by Mary M. Krickenberger on April 29, 1930. Following the execution of this deed and bill of sale Dan H. Goodman, on August 11, 1936, filed his petition in this action, alleging the facts substantially as above set forth. The petition also alleged that plaintiff was the absolute owner of

the said 40 acres of land and of the note above referred to; that defendants make some claim to the said property; and asked that plaintiff be decreed ,to be the absolute owner of all of said property, and that the defendants be barred and forever estopped from having or claiming any right or title thereto.

The defendants, F. F. Bauer, administrator, and Sara C. Minor filed separate answers and cross-petitions, in which, after admitting the ownership of the land by Mary M. Krickenberger, that she died December 11, 1933, that F. F. Bauer was appointed administrator of her estate, and that the defendants make claim to the property described in the petition, they deny each and all other allegations of the petition. Said defendants allege that Sara C. Minor is one of the heirs at law of Mary M. Krickenberger, deceased; that on or about the date alleged in the petition Mary M. Krickenberger signed the instrument denominated declaration and deed of trust, at the request of plaintiff; that at that time said Mary M. Krickenberger, as the sole heir of her brother, John H. Krickenberger, was seized of the real estate described in the petition and of personal property of the value of approximately $6,000, of which the plaintiff, Dan H. Goodman, as administrator of the estate of John H. Krickenberger had assumed possession and control; and that, by reason of the fact that he was such administrator, said Goodman was a trustee charged with the duty to manage said property for the benefit of Mary M. Krickenberger, the sole beneficiary thereof, and by reason of such fiduciary relation was barred from acquiring any interest in said estate. They further allege that at the time she signed said instrument Mary M. Krickenberger was a person of unsound mind, unable to appreciate the effect of the instrument referred to, and entirely incapable of expressing any consent to the acquisition by said administrator of any interest in the property of which he was trustee, or any interest in the property which said Mary M. Krickenberger owned or in which she had a beneficial interest as the *cestui que* trust of said Dan H. Goodman, trustee; that said Dan H. Goodman knew that said Mary M. Krickenberger was a person of unsound mind, but notwithstanding such knowledge, induced her to sign the said instrument; that the said instrument ,was signed without appreciation by her of the purpose of said Goodman or of the effect of said instrument; and that said acts on

the part of Goodman constituted a fraud in law upon the rights of said Mary M. Krickenberger.

Upon the trial of the case the trial court entered a decree in favor of the plaintiff and established his ownership in and quieted his title to both the real estate and the personal property described in the petition against the defendants and unknown claimants. From this decree of the trial court the defendants, F. F. Bauer, administrator, and Sara C. Minor appeal.

Appellants contend that, as the administrator of the John H. Krickenberger estate, Goodman sustained a fiduciary relation toward Mary M. Krickenberger, and that, as to her, he was a trustee holding the title and possession of the assets of said estate in trust for her as the *cestui que* trust; that, on account of this fiduciary relation, the burden was upon him to show that, in the execution of the declaration and deed of trust conveying to him an interest in the trust property without consideration, Mary M. Krickenberger was in no way influenced by him, and that she executed the same of her own free will with full knowledge and appreciation of the effect of the instrument; and that the appellee has failed to sustain this burden because, at the time of the execution of said instrument, Mary M. Krickenberger was of unsound mind and mentally incapable of understanding the effect of said instrument and of giving the assent necessary to the validity thereof.

 That the administrator of an estate is a trustee for the benefit of the persons interested in such estate seems to be well established. Bettendorf v. Bettendorf, 190 Iowa 83, at page 109, 179 N. W. 444, 945; Ryan v. Hutchinson, Judge, 161 Iowa 575, at page 584, 143 N. W. 433; Lampman v. Lampman, 118 Iowa 140, 91 N. W. 1042; Leach v. Farmers Savings Bank of Hamburg, 205 Iowa 114, at 116, 213 N. W. 414, 217 N. W. 437, 56 A. L. R. 801, at 804. Whether, conceding this to be the rule, the appellee Goodman, as administrator of the John H. Krickenberger estate, stood in the position of trustee to Mary M. Krickenberger as to any more than the personal property, might be questioned in this case. However, we deem it unnecessary to discuss or decide this proposition, and will proceed on the assumption that the relation of trustee and *cestui que* trust did exist.

In support of their contention that, because of the existence of this relation of trustee and *cestui que* trust, and be-

cause Goodman acquired a valuable interest in the trust property without consideration, a presumption is raised that the instrument conveying such interest was procured by him through the confidence and trust reposed in him by Mary M. Krickenberger, constitutes a fraud in law, and imposed on Goodman the burden of proving that the instrument was executed by her of her own free will and with full knowledge and appreciation of its effect, appellants cite Johnson v. Johnson, 196 Iowa 343, 191 N. W. 353; Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873; Hull v. Mitchell, 181 Iowa 51, 162 N. W. 235. It may be conceded that the cases cited fully sustain the rule contended for by appellants, as applied to gifts *inter vivos*. Appellee, however, contends that neither the rule nor the reasons underlying it furnish any support for its application to the facts of this case; that the interest acquired by Goodman under the declaration and deed of trust here involved is not a gift *inter vivos*, but is more in the nature of a testamentary disposition; and that the rule applicable to testamentary dispositions of property is applicable in this case. The difference between these two rules, and the reasons for this difference are well stated by Judge Gaynor in Pirkl v. Ellenberger, 179 Iowa 1122, at page 1132, 162 N. W. 791, at page 795, wherein he said:

"The rule and its application to contracts *inter vivos* secures recognition through the fact that the living do not part with their property, even to their dearest friends, during their lifetime, without at least a fair consideration. Where one sustaining fiduciary relations to another secures from the other a gift or donation, or a contract greatly to the disadvantage of the giver *inter vivos*, the law raises a presumption that the gift would not have been made, or the contract entered into, through the free and voluntary volition of the giver. This presumption calls upon the beneficiary to purge himself at least from a suspicion of improper influence in bringing about the gift. It is common experience, and courts recognize this, that owners of property do not readily part with their property, by way of gift, during their lives.

"In contemplation of death, however, the transaction wears a very different aspect. The property must be parted with when that event arrives. It is most natural to select for benefaction those who are nearest and dearest, whether related by blood,

business, friendship or association. Men do not, in contemplation of death, ordinarily give their earthly possessions over to their enemies, nor to those in whom they repose no trust and confidence. Indeed, the closer the relationship, the greater the bond that binds, the more certain is the mind that the testator chose intelligently the objects of his bounty. That he chose one who is dear to him and excluded one who ought to be equally dear, does not cast upon the beneficiary the burden of showing that he did not procure the benefaction by the use of undue influence.''

In support of his contention that the rule contended for by the appellants does not apply in this case, appellee cites the statement contained in 65 C. J. 320, as follows:

"The mere fact that confidential relations exist between the grantor on a deed of trust and one of the trustees contingently interested in the subject of the trust after the termination of the trust, on the death of the grantor, does not raise a presumption that undue influence was exercised to procure the execution of the deed, especially where such deed has long been recognized, acquiesced in, and reaffirmed.''

The only authority given in support of this statement of the text is Townsend v. Allen, 59 Hun. 622, 13 N. Y. S. 73. In the same paragraph of Corpus Juris, however, and immediately following the statement quoted, is the following:

"On the other hand, the existence of a confidential or fiduciary relation may, under some circumstances, raise a presumption of undue influence, which will cast the burden of showing the want of undue influence on the party seeking to establish a trust.''

The only authorities referred to in support of this statement are Madden v. Glathart, 125 Kan. 466, 265 Pac. 42, and Holley v. Still, 91 S. C. 487, 74 S. E. 1065.

Aside from these quotations from Corpus Juris, and the cases above referred to, which are cited in the annotations to the text, we have been unable to find and neither party has called our attention to any authority in which the question with which we are here confronted is considered or decided. In our opinion, the statements of the text, when considered in connec-

tion with the cases referred to in the notes in support thereof, cannot be considered as announcing or establishing any rules of evidence as to the burden of proof, but rather illustrate the attitude of the courts in the particular cases as to the weight and effect to be given certain facts and circumstances. Under the facts of this case, considering the terms of the instrument itself; that Mary M. Krickenberger, the grantor, was to have the use and benefit of all of the property conveyed; that this benefit was not limited to income alone but might require the use of the principal also; that no other person was given any interest therein until after her death; that Goodman's interest was in the remainder only after all other expenditures provided in the instrument had been made and might fail altogether if the estate were exhausted; that the fiduciary relation existing between Goodman and Mary M. Krickenberger is based only on their status as administrator and heir respectively of the estate of John H. Krickenberger, deceased; that there is no evidence that Goodman at any time exercised domination or control or had any influence over Mary M. Krickenberger, or that Mary M. Krickenberger reposed special confidence in Goodman, asked or relied upon his advice, or consulted him in any way in connection with the execution of the instrument here involved; we think it very questionable whether, under the facts and circumstances of this case, there was any presumption that the instrument in question was executed as the result of any influence exercised by Goodman over Mary M. Krickenberger. However, in the view we take of this case, it is unnecessary to decide this proposition, because, even if the burden upon the appellee be as claimed by the appellant, we think such burden has been fully sustained.

There is a conflict in the evidence in regard to the mental capacity of Mary M. Krickenberger. While none of defendants' witnesses was present when the declaration and deed of trust was signed, several of them testified to matters which, if true, would be sufficient to sustain a finding that Mary M. Krickenberger was of unsound mind at that time. On the other hand, if the testimony of the witnesses for the plaintiff is true, we can see no escape from the conclusion that the declaration and deed of trust was signed by Mary M. Krickenberger with full knowledge of the nature and effect of the instrument she was signing, and that she signed it of her own free will and not as

the result of any influence exercised over her by Goodman. It is impossible to review the evidence of all the witnesses, and we shall not attempt to do so. Two of defendants' most important witnesses were Mrs. Eulalia Carstens, formerly Eulalia Knipher, and her sister, Violet Knipher, who worked at the Krickenberger home during the period from prior to John H. Krickenberger's death until after the date of the execution of the declaration and deed of trust. These witnesses both testified to conditions in the Krickenberger home during all this time; to strange appearance and acts of Mary M. Krickenberger; to the dirty condition of her person and clothing; and to the filthy use of a bucket ordinarily used for drinking water. They further testified that they worked there alternately, each working only a week at a time, because of the irrational acts of Mary M. Krickenberger and the difficult and disgusting conditions attending their service. If their testimony is true, Mary M. Krickenberger was clearly such a physical and mental imbecile that no one could have had either social or business contacts with her without realizing her condition, and the witnesses for plaintiff, whose testimony will hereafter be considered, must have committed deliberate perjury. Dr. Amick, a physician who attended John H. Krickenberger during his last sickness, testified to having been called to see Mary M. Krickenberger on the second day of May 1930, that she was suffering from a debilitated heart, high blood pressure, advanced heart and kidney diseases, and hardening of the arteries, which caused a decline in her mental ability, and that she was then suffering from senile dementia to the extent that she was of unsound mind. This witness moved away from Iowa county in 1931 and had not seen Mary M. Krickenberger at any time thereafter. Dr. Miller testified that he had been called to the Krickenberger home on one occasion during the last illness of John H. Krickenberger, when Dr. Amick, the family doctor, was absent; that he saw Mary M. Krickenberger at that time and that she impressed him as being somewhat odd and eccentric; but he expressed no opinion as to her mental condition based on his personal observation. In answer to a hypothetical question which assumed high blood pressure, a weakened heart, a complication of kidney trouble, a mental condition that in the opinion of her attending doctor was unsound, and other facts in regard to her conduct, including those testified to by the Knipher sisters, and which asked

for his opinion as to whether she was of sound or unsound mind, he said: "Well, I suppose I would have to say she was not sound, therefore unsound." Other witnesses for defendants also testified to matters on which they based their opinion that Mary M. Krickenberger was of unsound mind, but most of this evidence was such as frequently is found in cases where mental capacity is in issue, and adds but little, if any, to the matters already set out.

On the other hand, Mr. Off, the attorney who drew the declaration and deed of trust, testified that he first met Mary M. Krickenberger after the death of her brother, when he went to her home with Goodman, and she signed the petition for the appointment of Goodman as administrator of the brother's estate; that he may have seen her on one or two other occasions thereafter in connection with the preparation of the inventory and report of appraisers, before anything was said in regard to any disposition of her property; that several days before the declaration and deed of trust was executed, Mary M. Krickenberger called him by telephone and asked him to come to her home; that when he arrived there she told him that "she wanted to fix an instrument of some sort that Dan Goodman would be, would take care of her the rest of her lifetime, take care of her wants, so that the property would be left to him. She said I would like to leave the Pleasant Grove Church $100, I would like also to leave my friend Mrs. Barnes $100, said I would like to know I am going to get a proper burial at my death, I want something drawn of the nature that will take effect at the present time so that I know that Dan Goodman is going to receive this property and so that I know I am going to be taken care of the rest of my days." She also told Mr. Off that she wanted this instrument to be witnessed by L. W. Hatter and S. C. Welsh and requested him to procure their attendance. After obtaining the necessary data, Mr. Off returned to his office and prepared the instrument that is here involved. He further testified that some days afterwards Mary M. Krickenberger again called him by telephone and suggested that, as it was a fine day, he have the witnesses meet him at her home and have the instrument executed; that he went to her home with this instrument about noon and arranged to have the witnesses come there about two o'clock; that, on reaching the home and before the witnesses came, he read the instrument over to Mary M. Krickenberger

1096

and explained it to her; that she said, "that is just what I want." That she said, "that she and John had talked this over before John's death and that John wanted an instrument drawn of the same nature before his death"; and she told the witness "that was one of the reasons that she had this made in order to comply with John's wishes and carry out her own intentions."

Mr. Welsh and Mr. Hatter reached the Krickenberger home after Mr. Off had read the instrument over to Mary M. Krickenberger, heard part of it read, heard her say that it had been read to her and that it was what she wanted, and both signed as witnesses. After the instrument had been signed and witnessed, Off testified he left the house, met Goodman somewhere around the barn, explained to him what Mary M. Krickenberger had done, and asked Goodman if he was willing to act as trustee, and, upon his consent to do so, had him sign and acknowledge the acceptance of the trust. Off testified that this was the first time that anything connected with the deed of trust was ever mentioned by him to Goodman, and Goodman testified that Mary M. Krickenberger had never mentioned the matter to him and that this was the first intimation that he had in regard to it.

Mr. Off is an attorney at law residing at North English in Iowa county, and, so far as the record shows, there is nothing to indicate that he is other than a reputable member of the profession. Goodman, as already stated, was a neighbor of the Krickenbergers, and was the lessee of the land, and there is nothing in the record to indicate that he had talked to either Mary M. Krickenberger or Off in regard to any disposition of her property, prior to the execution of this instrument, or had any intimation that its execution was contemplated. This evidence is not negatived by the fact that he was at the barn on the Krickenberger farm after the instrument had been executed, because his presence there may have been due to the fact that he was then the lessee of the land. Mr. Welsh, one of the witnesses to the deed of trust, was a farmer 65 years of age, had known Mary M. Krickenberger all his life, lived about three miles from the Krickenberger home, visited the Krickenbergers off and on, six or eight times a year, saw and talked to Mary M. Krickenberger at different times on the occasion of these visits, stated that she was always a little odd, but he never regarded her as weak mentally; that he saw her and talked to her at the time of John's funeral and after that time; that he never saw

anything whatever out of the way with her talk; that he did not see anything out of the way with her when she signed the declaration and deed of trust; that he talked with her that day; that she acted like she understood the instrument and said she understood it; that she said "she was glad this was over, she thought she had fixed it up the way John wanted it"; and, in answer to a question as to his opinion regarding her soundness or unsoundness of mind, the witness said, "As far as I seen she was all right." Mr. Hatter, also a witness to the deed of trust, 76 years of age, resided at North English, had been state representative from Iowa county, cashier of a bank at Millersburg, and county treasurer for five years, and had been acquainted with Mary M. Krickenberger for many years. He testified he had not talked to her often, but had talked to her some; that he did not notice anything unusual about her the day the instrument was signed; that he didn't notice anything that would indicate that she was irrational or anything of that kind; that she seemed to recognize or understand what the instrument was, and said it was the way she wanted it.

Frank Owen, a witness for plaintiff, 77 years of age, living at North English, had served two terms as sheriff, one term as clerk of the district court of Iowa county, during which he acted as a member of the insane commission, and was at the time of the trial a member of the board of supervisors of Iowa county. He testified that he had known Mary M. Krickenberger since childhood, and went to school with her; that she was about an average scholar, made her grades right along and, when she got further advanced, was one of the best spellers in the school; that he went to the Krickenberger home about eight o'clock in the morning on the day that John H. Krickenberger died, stayed there all day and part of the night, and was there when he died; that Mary M. Krickenberger was in and out of the room, talked to him about her brother, and talked to others who were there; that he did not see anything that would indicate to him that she was of unsound mind and that, in his opinion, she was of sound mind. Other witnesses for plaintiff also testified to long acquaintance with Mary M. Krickenberger, opportunities to see and observe her conduct, and conversations with her on different subjects, and said that in their opinion she was of sound mind.

In our opinion, the evidence of these witnesses for plain-

1098

tiff clearly outweighs the evidence presented by the defendants, goes far beyond making a mere prima facie case, and affirmatively establishes soundness of mind and freedom of action on the part of Mary M. Krickenberger, at the time she signed the instrument in question.

We think the evidence sufficiently shows that whatever relatives John H. Krickenberger and Mary M. Krickenberger may have had, who might be the heirs of the survivor of them, the relationship of all such persons was so remote and their places of residence so distant that neither John nor Mary had knowledge of who they were, where they lived, or of the degree of such relationship; that neither John nor Mary considered such relatives as objects of their bounty or was concerned in having such relatives share in the property that might remain after they were dead; that John and Mary talked this matter over prior to the death of John and agreed upon the disposition that should be made of their property upon the death of the survivor; that the declaration and deed of trust which was executed by Mary M. Krickenberger expressed not only her own desires, but also the desires of her deceased brother; and that in executing it she exercised her own free will, understood what she was doing and appreciated the effect of the instrument executed by her.

We find no reason for disturbing the decree of the trial court, and it is accordingly affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, KINTZINGER, MITCHELL, HAMILTON, and STIGER, JJ., concur.