IN RE ESTATE OF ELSIE WILLENBROCK.

No. 45019.

MARCH 5, 1940.

REHEARING DENIED JUNE 20, 1940.

Byron Goldthwaite and Wallace & Claypool, for appellants.

Hatter & Harned, for appellees administrator de bonis non and heir.

E. J. Von Hoene, administrator de bonis non of Fred H. Willenbrock estate, pro se.

BLISS, J.—Elsie Willenbrock died intestate, March 13, 1920, survived by her husband, Fred H. Willenbrock, and their only child, a daughter, Erma, born July 24, 1917. On his own petition, which recited that the intestate left personal property of the value of $1,800, the husband was appointed administrator of his wife's estate, on March 23, 1920, and qualified by taking and filing oath and giving bond for $3,600, with his brothers George and H. F. Willenbrock as sureties thereon. He published notice of his appointment, as ordered, in the issues of March 24th, 31st and April 1, 1920, of a Marengo newspaper. On March 24, 1920, he received $1,707.25, as the share of his deceased wife from the sale, in a partition action, of real estate

belonging to her father's estate. But two claims were filed against the estate—one by Lane for $34.14, and the second, by Dr. Augustine for $177, for services rendered the deceased in her last illness. The funeral expenses, amounting to $207, were not filed as a claim. The administrator paid these three bills. He never filed an inventory, nor a report of a receipt or a disbursement, of any kind. The only item of cost entered was the publication fee of $5.40. E. J. Sullivan is noted on the probate docket as the attorney for the estate. The administrator died testate, February 9, 1928, without closing the estate, or filing anything further relative to the administration thereof. His brother, L. C. Willenbrock, qualified as executor of his estate. The only property he reported was $15 in cash, and the 40-acre homestead, mortgaged for $7,927 and valued at $12,000. The homestead was not disposed of in the will, but was inherited by the daughter, Erma, as intestate property. She was the sole beneficiary and recipient of all of his estate. On the letters testamentary was indorsed the order of the clerk that notice of the appointment should be by posting one notice at the front door of the courthouse. Proof of the posting was filed. This order of posting is shown in the executors' and administrators' bond record, and in the probate docket is the following record: ''Notice of appointment given of posting April 20, 1928.'' We refer to these records because the appellees claim that the order was not entered of record in the probate docket as provided by section 11890, and that therefore legal notice of the appointment was never given, and that the statute of nonclaims never commenced to run. Claims were filed in this estate to the amount of approximately $200, included among them being the claim for $50 of E. J. Sullivan, for services as attorney for the deceased as administrator of the Elsie Willenbrock estate. The executor filed his final report and petition for discharge, December 26, 1929, reciting the payment of the court costs, and his inability to pay the claims because of lack of assets, which could be subjected to their payment. After giving notice as ordered the report was approved, the estate closed, and the executor discharged by order of court on Janu-

ary 10, 1930. The executor made no report of anything done by him as the personal representative of the deceased, as administrator of the estate of Elsie Willenbrock, or of anything done by the latter as such administrator, or of any assets of said estate.

Erma was about 11 years old at her father's death. She had lived with him until his death. L. C. Willenbrock, the executor, was then appointed guardian of the person and property of Erma, and took her to live with him at his home in Newton. He sold the homestead in March 1930 for $12,000, and after paying the liens on the property, he received for his ward $1,396.92 in cash and a note of $1,000 from the purchaser secured by a third mortgage on the land. Later in a refinancing of the farm by the purchaser, through the Federal Land Bank of Omaha, he compromised the amount due on the note for $200. His ward attained her majority by marriage on May 29, 1937. The final report of her guardian was approved and he was discharged by order of court on September 8, 1937, and he delivered to his ward $1,032.98, in cash or its equivalent, in full settlement of her property rights.

Erma testified that she first learned of the property which she inherited from her mother, in December 1938. On January 31, 1939, she filed petitions in the estates of both her father and mother, setting forth the above-stated facts, and procured the appointment of Ole H. Olson, as administrator de bonis non of the estate of her mother, and the appointment of E. J. Von Hoene, as administrator de bonis non of the estate of her father. The latter filed what he denominated a "report and accounting", showing the receipt by his decedent of the $1,707.25, and his payment of the Lane claim and the funeral expenses, leaving a balance unaccounted for of $1,466.11, with interest from March 24, 1921. The report and accounting was set down for hearing, and the sureties on the administrator's bond filed "answer, objections and exceptions" thereto, alleging no knowledge of the receipts and disbursements or their correctness and therefore denying the same. They admitted their suretyship, and the administration of the two estates, but alleged that Erma

had acknowledged receipt in full of all property to which she was entitled in the guardianship, and that as heir or legatee she had received all property left by her father, that she had filed no claim against her father's estate, and that any liability of the sureties on the bond was barred by the nonclaim statute, and the general statute of limitations. Thereafter Erma, and Olson, as administrator de bonis non, joined in the report and accounting of Von Hoene, administrator de bonis non, and prayed that the sureties and Von Hoene, as administrator be adjudged liable to Olson, administrator, for the amount unaccounted for. The sureties then amended their original pleading, alleging that the administrator of the Elsie Willenbrock estate had paid all claims against it within the year for filing claims; that they had paid all costs taxed or taxable to the estate; that no creditors or anyone, other than Erma, had any interest in said estate; that she, as the only heir, had a right to demand an accounting from the administrator, at the end of said year for filing claims, and at the end of three years from the first publication of notice of the administrator's appointment, as provided by statute (section 3394, Code of 1897, section 12044, Code of 1924), and at the death of her father; and that because of the matters alleged, Erma was the only person who might bring action against the sureties, and that the court had no jurisdiction to appoint the administrators de bonis non Olson and Von Hoene, as administrators, and Erma, as the sole heir, joined in a reply, denying the allegations of the answer, and further alleging that the sureties in paying the court costs of $9.40 in the Elsie Willenbrock estate on March 18, 1939, had admitted their liability on the bond, and had estopped themselves from asserting that Erma was the only proper party to prosecute any proceedings against the sureties.

The court rendered judgment, finding, in general, as alleged by the appellees, allowing credits for all claims filed, the funeral expenses, and court costs of $9.40, leaving a balance of $1,279.71 unaccounted for and owing the administrator de bonis non of the Elsie Willenbrock estate, by Fred H. Willenbrock, his personal representative and the sureties on his bond, with interest from

March 23, 1923; that upon payment of said sum to Olson, administrator, the sureties were entitled to receive back from said administrator, upon the closing of the estate, the one-third distributive share of Fred H. Willenbrock, in his wife's estate. Judgment was rendered against the sureties for $2,465.82, with interest at 5 percent per annum from April 24, 1939.

The appellants assign errors for reversal of the judgment as follows: (1) any claim urged by the appellees was barred by statutes of limitation; (2) the court was without jurisdiction to appoint either of the administrators de bonis non; (3) the court erred in entering judgment for the full amount of the balance unaccounted for without first allowing credit for the amount of the distributive share of Fred H. Willenbrock in his wife's estate; (4) that Erma had received all the property to which she was entitled out of the estate of her mother, from the property left by her father.

Counsel on both sides, with marked industry and ability, have very forcefully presented this appeal to us by printed, typewritten, and oral argument, supplemented by epistolary afterthoughts since the oral submission. They have instructively discussed the quite numerous decisions of this court, and of other courts, dealing with the question of who holds title to intestate personal property, on the death of the decedent, and the nature of that title, and whether a right of action accrues therefor, or for an accounting, at the termination of the year for filing claims, or at the end of the three-year period referred to in section 12044 of the 1935 Code of Iowa, or on the death of the administrator, or not until the administrator openly disavows any obligation as trustee to account for the property. In the view which we take of this case, the correct determination of it does not require either a discussion or the answering of any of these questions.

We agree with counsel for both sides that the administrator of an intestate estate takes possession of and holds the same as an express trustee thereof, for the claimant creditors of the decedent and of the estate, the heirs, and the spouse of the

decedent, and for any others who may have a proper interest in the property. Blackman v. Baxter, 125 Iowa 118, 100 N. W. 75, 70 L. R. A. 250, 2 Ann. Cas. 707; Christe v. Chicago R. I. & P. R. Co., 104 Iowa 707, 74 N. W. 697; Murphy v. Murphy, 80 Iowa 740, 45 N. W. 914; State v. Potter, 195 Iowa 163, 191 N. W. 855; Goodman v. Bauer, 225 Iowa 1086, 1090, 281 N. W. 448; Bettendorf v. Bettendorf, 190 Iowa 83, 109, 179 N. W. 444, 945; Ryan v. Hutchinson, 161 Iowa 575, 584, 143 N. W. 433; Powell v. Overton, 191 Iowa 574, 578, 181 N. W. 24; Packer v. Overton, 200 Iowa 620, 624, 625, 203 N. W. 307.

 Under sections 3362 and 3363 of the Code of 1897, effective during the early years of the administration of the Elsie Willenbrock estate, the personal property not necessary for the payment of debts nor otherwise disposed of went to the same persons and in the same proportions as though it were real estate, as soon as the administrator could properly distribute it.

There came into the administrator's possession assets of the estate to the amount of $1,707.25, being the intestate's two twenty-firsts interest or share in the proceeds of the partition sale of real estate belonging to her father. Deducting therefrom the sum of $418.14, which the administrator expended in full payment of funeral expenses and all claims filed, and the sum of $9.40 court costs, later paid by the sureties, there remained the sum of $1,279.71 for distribution to himself as surviving spouse, and to his daughter, as the sole heir of her mother. Of this balance, he was entitled to one third, or $426.57 as his distributive share, and Erma was entitled to two thirds, or $853.14. He never had himself or anyone else appointed guardian of this property for her. He was the natural guardian of her person. He retained this property in his possession as the property of his daughter until his death in February 1928. His relation to the daughter was not that of debtor and creditor, but that of trustee of an express trust and cestui que trust.

 On the death of his wife in March 1920 he had a difficult task ahead of him, in attempting to rear a motherless baby. He was then living on what is described as the Pole farm. He

moved into Marengo, in December of 1920, and lived there until March 1, 1922, when he moved back to the Pole farm, and remained there until in June 1923 when he moved on to the 40 acres which became his homestead and that of his daughter until his death. His relationship to the property of his daughter never changed. It was her property in his possession. Appellees say that he converted it to his own use. There is no evidence of such conversion. As trust property belonging to her, he is presumed to have conserved and retained it for her. Appellees, in their argument, repeatedly state that, as such trustee, he is presumed to have preserved this property. There is no question as to this principle of law. It is a rebuttable presumption, but it stands until overcome by evidence. It was first announced by this court in Independent Dist. v. King, 80 Iowa 497, 502, 45 N. W. 908, 909, wherein, in speaking of the insolvent bank, we said: "As they received it knowing its trust character, it will be presumed, in the absence of a showing to the contrary, that it was preserved by them in some form, and that it passed into the hands of their assignee." In Stilson v. First State Bank, 152 Iowa 724, 727, 133 N. W. 354, 355, we said: "In the absence of evidence to the contrary, it will be presumed by a court of equity that a trustee will intentionally preserve a trust fund." In City of New Hampton v. Leach, 201 Iowa 316, 320, 207 N. W. 348, 350, the court said: "If a trust fund is established, a presumption arises that it was retained in the possession of the trustee * * *." The fact that this is a law action does not preclude us from applying equitable principles to the controversy. Hamm Brewing Co. v. Flagstad, 182 Iowa 826, 833, 166 N. W. 289.

In the above-cited cases the trust funds had gone into the possession of insolvents, and the controversy arose between the claimants of the trust funds and general creditors. The question which always arises in such cases is whether the trust funds have so augmented the insolvent estate that they can be withdrawn without injuring the rights of general creditors. We have no such complication in this case. There were no claim-

ants of the trust estate of Erma, and there were no claimants of the estate of her father. There was in fact no controversy between Erma and her father. He had never repudiated the trust, and the appellees concede this. So far as the record shows he had at all times sufficient assets to return to her all of her property. The record establishes that he had sufficient assets to do so at his death. He owned 40 acres of land which was sold for $12,000, and after paying all liens upon and charges against the land, there remained $2,396.92, which was over $1,000 in excess of the amount of his daughter's property, in the possession of his administrator and executor, computing interest at 6 percent a year, with annual rests. She received all of this to more than recompense her for the trust estate which had been held for her by her father. She received this property to the amount of the trust estate, not as an heir of her father, but as her own property, and in full satisfaction of any obligation of her father, as administrator of her mother's estate, or of the appellants as surety upon his bond as such administrator. Suppose that just before he died her father had borrowed money upon his 40 acres, or had sold it and, out of the proceeds, had paid to her his obligation and returned her property in full, would there be any reasonable or just basis on which to assert a claim against him and the sureties on his bond? The answer must be in the negative. Did the fact that the receipt, by her of her property, was through the administration of his estate, render the satisfaction of the liability of the obligors in the bond any the less effective? The correct answer is that the obligation of the bond was fully satisfied. The fact that the daughter's property was conserved for her in an exempt homestead, does not avail the appellees. Had the 40 acres been nonexempt her trust estate therein could not have been subjected to the payment of any debts of her father. She would have been entitled to it, and its receipt by her would have satisfied the bond. As a matter of fact her father's unsecured obligations, other than to her, were but approximately $200.

█ The appellees claim that this defense was not raised in

the pleadings. There is no merit to such claim. The so-called pleadings were quite informal, as is usual in probate proceedings. Administrator Von Hoene filed a "report and accounting," in which he stated that the daughter by will and by inheritance, had received *all* of the property in her father's possession. Administrator Olson and the daughter joined in this report and accounting, and adopted it. In their answer and objections the appellants re-alleged that the daughter had thus received all of the property in her father's estate, and because of this and other matters alleged, they averred that they were not liable on the bond. Proof was introduced showing the assets and liabilities of the father, and an excess value of the former over the latter in an amount exceeding any claim of the daughter. The fact statements alleged were of sufficient breadth and particularity to raise the question. Pleadings in probate do not require the particularity and formality of pleadings in suits or actions generally. It is our conclusion that the appellants are not liable upon the bond in question, and that they should be exonerated of record. There is no disputed fact in the record, particularly with respect to the matters upon which we base our decision. These facts have been and are established by proceedings in court. It would serve no good purpose to send the action back for further trial. It is therefore our judgment that the judgment appealed from is reversed and remanded to the district court for the rendition and entry of judgment not inconsistent herewith.—Reversed and remanded.

HAMILTON, C. J., and HALE, RICHARDS, SAGER, OLIVER, MITCHELL, MILLER, and STIGER, JJ., concur.