In re Estate of Louisa Smith.

Bernice L. Kuhn, Appellee, v. Richard Hudson, Administrator, Appellee; Edwin Willcockson, Guardian of Clair Ann Liechti and guardian ad litem of minor heirs, Intervenors, Appellants.

No. 47361.

(Reported in 36 N. W. 2d 815)

500

APRIL 5, 1949.

Edwin Willcockson, of Sigourney, pro se.

C. J. Lambert, of Sigourney, for claimant-appellee.

Snakenberg & Snakenberg, of Sigourney, for administrator-appellee.

BLISS, J.—Louisa Smith died intestate April 15, 1946, leaving no spouse, but survived by her daughter, Grace Conklin, and seven minor children of a deceased daughter, Gertrude Liechti. Bernice L. Kuhn, age thirty-three, the claimant, a daughter of a deceased sister of the intestate, lived in the home of the latter for approximately eighteen years—from the time she was about ten years old until 1943. Their relations at all times were very close and congenial. Claimant was about the same age as the daughter, Grace. The property which claimant received from the estate of her mother was largely invested in Home Owners Loan Corporation bonds by her guardian. Upon the discharge of her guardian in 1935, when she was twenty-one years old, she received these bonds.

Fred Smith, husband of Louisa, had preceded her in death several years, leaving her about nine hundred acres of land near Sigourney, apparently of mediocre quality and heavily encumbered, except eighty acres. In 1936, the insurance company holding the mortgage conditioned its renewal upon a reduction of the principal. Louisa asked Anna Smith, mother of her deceased husband, for a loan of $4000, which sum the mother-in-law told her she did not have available. Claimant, who overheard this talk, then told her banker, at Sigourney on September 17, 1936, to sell enough of her HOLC bonds to procure $4000. When the bond money of $4180 came in, the banker put it into a demand certificate of deposit payable to claimant. On October 5, 1936, claimant and Louisa came to the bank and claimant endorsed the certificate and gave it to the banker, who deposited it in the checking account of Louisa Smith. This deposit of $4180 together with an additional deposit by Louisa, and a small balance in her account, was sufficient to pay a check of $4569.24, which Louisa had drawn thereon and sent to the mortgagee. For some unaccountable reason no note or

written evidence of this loan or debt was given by Louisa to claimant.

Louisa did much of her banking at Hayesville. She and claimant usually came to the bank together. Her liability account at this bank showed that, commencing on October 4, 1937, when Louisa borrowed $1000, through each year to the last note on September 30, 1942, due January 2, 1943, she had given nine other notes to the bank, aggregating several thousand dollars. Claimant had endorsed each of these notes and had also pledged as collateral security one or more of her HOLC bonds. The banker testified that from their conversation and the fact that each at times gave money to the other, it appeared to him there had been mutual accommodations between them in money matters. All of the note obligations to the bank, above noted, were later satisfied, and there was no evidence of like transactions subsequent to the note of September 30, 1942.

On September 16, 1946, claimant filed with the clerk of the district court her claim merely stating, "Money loaned $4000", which she swore was "just, true and unpaid."

On April 16, 1947, Edwin Willcockson, as guardian of the Liechti minors, filed his verified application for an order, stating that his wards were grandchildren of Louisa Smith and inherited an undivided one-half interest in the real estate left by her; he was informed some invalid claims, which should not be allowed by the administrator, had been filed but not allowed; in order to determine from the face of the claims it will be necessary that any alleged invalid claims be made more specific as to dates, amounts, balance due and whether written or oral; the guardian should be permitted to intervene in said matter and in this estate and contest the allowance of any invalid or questionable claim; and the administrator be directed to disallow and contest any invalid claim. He prayed that the court fix a time for hearing on the application with notice thereof, and that orders be granted as prayed and such others as might be proper. The record does not disclose that any hearing was had or orders were made.

But, on April 24, 1947, claimant swore to and filed an amendment to her original claim, stating that on October 5,

1936, she "loaned on temporary verbal arrangement to Louisa Smith, $4000 to assist her in refinancing her farm mortgage with the Equitable Life Insurance Co. of New York"; that she was a niece of deceased and had lived in her home for eighteen years, and after October 5, 1936, they had owned an automobile together and she owned some furniture, including a refrigerator, in the Smith home; that each had borrowed small sums from each other and had frequently talked about having a settlement and reducing the difference to writing in the form of a note; that there was no interest ever figured or paid on the original $4000 loan, but just before the death of Louisa, the latter discussed the $4000 debt with her daughter, Grace Conklin, whom she told about the debt, and that she was going to make a note as soon as she felt a little better; and that Louisa had a relapse and died suddenly, owing a balance on the claim of more than $4000.

Claimant, being a party to this action and also interested in the event thereof was incompetent to testify, and was not permitted, under section 622.4, Code of 1946, to testify to any of the matters alleged which were communications or personal transactions with deceased.

On April 26, 1947, the respective attorneys for the claimant, administrator and intervenors, in writing, agreed that: 1. The "disputed" claim for $4000, as amended, be that day brought on for trial, without a jury, to take the testimony of Grace Conklin, and that then the trial be adjourned to a later time; 2. "It is further stipulated and agreed that the guardian and guardian ad litem for the Liechti minors shall have the right to intervene and defend without objection from the claimant or the executor and shall be considered to have intervened and have made any and all general objections that he could make to said claim and may have the right to make any specific objections that he deems proper in connection with his duties as guardian ad litem at any time during the trial"; 3. "It is further stipulated and agreed that the executor and his attorney be considered as having made such objections to the claim as his duties as administrator require him to do for his protection as administrator. This stipulation is subject to the approval of the court to be endorsed hereon." What objections, referred

to in paragraph 3, supra, if any there were, "considered as having [been] made" by the administrator "for his protection" are not disclosed by the record before us. The stipulation was accepted and approved that day by Judge Yoder.

Directly after the agreement was executed and approved, Grace Conklin was examined as a witness for claimant. She testified to the relationships of herself and others to deceased as noted herein, and of claimant's living in the latter's home until 1943 when she bought and moved into her own home. Witness was married in 1932 and remained in her mother's home until September 1936. She was familiar with her mother's financial affairs, and of the demand of the mortgagee for some payment on the principal. She knew something of the financial dealings between her mother and claimant, but did not disclose their nature or extent. Her sister, Gertrude Liechti, died in March 1945, and thereafter her minor children, with ages from four to fifteen, lived in grandmother Smith's home. The witness was with her mother for a few weeks before her death. Claimant made an offer of proof of a conversation between deceased and the witness concerning the indebtedness of the former to claimant. The witness was clearly incompetent under Code section 622.4 and the court sustained intervenors' objection that the "guardian and administrator object to questions and answers * * * of this witness * * * for the reasons that the alleged contract is barred by the statute of limitations * * * and the witness is incompetent under the 'dead man's statute' * * *."

On February 11, 1948, the trial was resumed. Judge Yoder said:

"It is understood by and between counsel for all parties and the court that the provisions of paragraphs 2 and 3 of the stipulation of April 26, 1947, on file herein, apply *solely to matters of evidence, as distinguished from matters of pleading.*" [Italics added.]

"It is further understood by and between counsel for all parties that * * * the guardian for the Liechti heirs and as guardian ad litem for said heirs, shall have the right to file such additional pleading herein as he may deem proper and appropriate and that * * * the attorney for claimant shall

have the right * * * to file proper resistance or reply thereto."

Counsel for intervenors and claimant acquiesced in what the court said, but the interpretation (italicized above) of paragraph 2. of the stipulation, supra, appears entirely too narrow. It clearly includes "pleading" by its express terms.

Immediately following the statement of the court, and on February 11, 1948, the intervenors filed answer and objections to the Kuhn claim, as amended, denying its allegations, and alleging that the claim had "long ago been barred by the Statute of Limitations either as an open running account, oral promise for repayment of moneys or other things and is barred as a contract of any kind, and said claim does not constitute a claim against the estate of any kind and does not show any set of facts that is not barred * * * under sections 614.1 to 614.23 inclusive * * * section 635.68, Code, 1946." Intervenors also alleged that the claim could not be allowed "for the reason any and all assets and property in this estate came from real estate or the sale of real estate and the Statute of Limitations is a valid defense whether raised by the administrator or these intervenors and the claim should be dismissed."

A woman who was a close acquaintance of the deceased, the Hayesville banker, the Sigourney banker and the claimant were witnesses for the latter. The first of these testified to conversations with Louisa Smith on two occasions, the last talk being during the last illness of the deceased. In each talk she spoke of the debt of $4000 to the claimant, of her desire to pay it and of her intention to get it "fixed up with Bernice." Mr. Mertz, of the Hayesville bank, testified that when Mrs. Smith was dealing with his bank she remarked "that Bernice had helped her before and if it hadn't been for Bernice she couldn't have held her land because she had borrowed some money from her to refinance her loan." Mr. Williamson, of the Sigourney bank, testified to the transaction when claimant endorsed the certificate for $4180 and of her handing it back to him and his making out the deposit slip to Mrs. Smith in that amount, all in the presence of the latter and the claimant. The claimant testified to the same occurrence.

The intervenors offered no testimony other than that of

one of the administrator's attorneys. He testified that in addition to moneys and credits of $159.26, the sum of $1178.67 was realized from nonexempt personal property; there was considerable land in the estate and it was all sold by the administrator to pay debts and had been converted into cash; the homestead (apparently the home in town) sold for $6150 of which $615 were general assets; the farm land sold for $28,700, and the total assets available for payment of costs, expenses and liabilities were approximately $30,600:

"I prepared the application for the sale of real estate in the estate and the paragraph relating to the $4000 claim is that claims have already been filed totaling more than $1150, a large portion of which are claiming interest as evidenced by notes signed by deceased, and this administrator has knowledge of a loan of $4000 which has not yet been filed but no doubt will be filed in the near future, and when I said that I referred to the Bernice Kuhn claim. The application I just read from was made long before the time any claim was filed and that application brought to the attention of the court so that the real estate could be sold to show assets and liabilities was my purpose in setting out the various items and I was not trying to validate or invalidate the claim at that time or set it up as a good or bad claim."

On February 21, 1948, the court filed its findings of fact and conclusions of law. The court found and stated in substantially the following words: 1. The relationship between decedent and claimant was akin to that of mother and daughter (2) on or about October 5, 1936, claimant loaned decedent a sum in excess of $4000, which was never repaid, although she recognized the debt as late as her last sickness and the fact that it had not been paid and expressed a desire that it be taken care of (3) no note or other written evidence of the debt was ever executed by decedent (4) the administrator has by his conduct recognized the existence and justice of the debt and has not here asserted or urged the statute of limitations (5) the claim is limited to $4000 principal and no interest is asked, and (6) on May 25, 1946, before claimant filed her claim, the administrator filed a petition to sell the real estate for the

purpose of paying the debts of the estate, resulting in an order therefor entered by the court on July 6, 1946; the Liechti heirs, represented by their guardian and guardian ad litem, were parties to the proceeding; in this petition "the administrator recognized the existence and anticipated the filing of the claim presently involved and although said claim or potential claim was not identified by the name of claimant such identification could have been required if there had been any doubt relative thereto. The order directing sale also makes reference to an anticipated claim of $4000 and provides that the proceeds of sale (except as to the homestead property) shall become general assets of the estate subject to the payment of all debts, expenses of administration, costs and so forth that are incident to the administration of the estate. No appeal was ever taken from said order."

The court in its conclusions of law stated:

"1. An administrator is not legally bound to plead the Statute of Limitations as against a claim he believes to be just and unpaid. In re Baumhover Estate, 151 Iowa 146.

"2. Except where the personal representative himself holds the claim against an estate as in McDermott v. McDermott, 138 Iowa 351, or where fraud and collusion constitute the ground of objection as in Re Douglas' Estate, 140 Iowa 603, an heir cannot appear in resistance to the allowance of a claim.

"3. Since the Statute of Limitations was not interposed by the administrator and since the claim has been established as existing, just and unpaid it should be allowed.

"4. The contention now made on behalf of the Liechti heirs that the claim should not be allowed because only the proceeds of the sale of real estate are available for payment, cannot be urged here for the reason that it has already been determined that the proceeds of the sale of real estate be used by the administrator in payment of the debts of the estate. Any contention of nonliability of proceeds to the payment of this claim, which claim as above stated was recognized and anticipated in the sale proceeding, might well have been asserted in the said prior proceeding but not here."

On February 26, 1948, the court filed judgment, restating

its findings of fact and conclusions of law, which adjudged that the claim of claimant was allowed in the sum of $4000 without interest to be paid from any funds in the administrator's hands available for payment of claims.

Intervenors' motion for judgment notwithstanding the findings, rulings and judgment of the court and motion for new trial were denied.

The trial court's findings of fact with respect to the petition for the sale of, and its order to sell, the real estate, were apparently based upon the court files of the estate, as the information does not appear in the printed record, except as shown in said findings. None of the files in the estate are before us nor are they abstracted. The administrator was not a witness. So far as the record shows he never in any way expressed himself with respect to this claim, except his reference to it in the petition to sell the real estate. He never approved or allowed the claim, nor expressly admitted it in writing. He never expressly rejected it, but under section 635.57 it was "considered as denied." He at no time interposed the defense of any statute of limitation, and filed nothing in this action. The original claim was filed within the six-months period of Code section 635.66. The deceased was heavily in debt at her death and during several years before. Much of this debt was secured by mortgage on her land. The amount of the mortgage debt is not shown, nor whether it was filed as a claim against the estate. The amount of the claims filed is not shown. The amount realized from the personal estate was insufficient to pay the obligations of, and the charges against, the estate. The court made no specific finding that this claim was barred by any statute of limitation. It was evidenced by no writing and was not a part or balance of any open, current account. (Sections 614.1, 614.5, Code of 1946.) It was not revived or renewed as provided in Code section 614.11. The record establishes quite conclusively that on October 5, 1936, claimant loaned deceased $4180 without interest and that $4000 was unpaid when deceased died. The wards of the intervenor were heirs of the deceased and distributees under the statute and were the owners of an undivided one-half interest in the real estate sold and

the proceeds of the sale out of which this claim was ordered to be paid.

Mention is made by the appellee that "the case was tried in probate as a law case, without a jury. The court's findings are equivalent to a jury verdict." No one will dispute this. But these facts have little application in this case. For, as claimant also states, "there is no dispute as to the facts, and they must stand without dispute." The controlling issues are those of law. As stated in In re Estate of Carpenter, 232 Iowa 919, 929, 5 N. W. 2d 175, 180: "This case is not triable de novo, but the facts are not in dispute, and the issue is one of law." We may, of course, review errors of law committed by the court. In re Estate of Chismore, 194 Iowa 300, 302, 189 N. W. 770.

Intervenors assign seven errors on which they rely for reversal, and support them with ten divisions of brief points. Divisions 1, 2, 3, 4 and 5 state that under any theory, urged or supportable, the bar of the statute of limitations became effective within five years from the date of the debt, since the debt was based on an unwritten contract with no time of payment fixed, and was in no way revived or renewed as provided by statute.

Of these five divisions, intervenors, in the printed argument stated: "The points raised * * * need no argument other than to call them to the court's attention." Referring to this statement, claimant answered that the points urged and the authorities cited had little "if anything to do with a decision of the case." The propositions are sound and pertinent but need no discussion.

The brief points in divisions 6 and 7 are that the heirs may appear and resist the claim and interpose the defense that the claim is barred by the statute of limitations, either in their own names or in the name of the administrator, and may prosecute an appeal.

Of these, claimant states:

"His [intervenor's] divisions 6 and 7 are based on the theory that the heirs or interested parties may appear and defend and may prosecute an appeal from an order in probate, affecting their interests. These general statements are not con-

tested by the appellees. At the beginning of the case and before the appellants filed or offered any pleadings to set out their contentions, both this appellee, and the administrator stipulated with the appellants that they might intervene, and the court approved the stipulation."

Division 10 merely supplements divisions 6 and 7, by stating that Code sections 638.10 and 638.11 also permitted the intervention, and that the guardian ad litem was authorized by statute to defend against the claim. Division 9 is also supplemental in that it states that since the intervention was made by agreement and the answer and objections were in no way challenged by any procedural attack, it cannot now be urged that the intervention was without right.

I. The minor wards of the intervening guardian had a monetary interest in the event of claimant's proceeding to establish her claim. They were heirs of the intestate and had equal rights in the property which she owned at her death, with their aunt, Grace Conklin. The estate, both real and personal, was liable for the payment of the valid debts of the deceased, and the expenses of administration. The deceased was heavily in debt, much of which was secured by mortgage liens on the land. It was clearly evident that these debts, secured and unsecured, would have to be paid by sales of the real estate, by foreclosure or by the administrator or by both. The sum of $1337.93 was realized from the personalty which had passed into the administrator's possession and control on intestate's death, with the right to dispose of it in satisfying the obligations of the deceased and of her estate. He had no beneficial interest in this property. Such of it as was not necessary for the payment of debts or otherwise disposed of was the property of the statutory distributees—in this case the heirs, the Liechti minors and Mrs. Conklin—in the same proportions as though it were real estate. Section 636.1, Code of 1946; In re Estate of Willenbrock, 228 Iowa 234, 239, 240, 290 N. W. 502. It was probable there could be little, if any, residue remaining after the payment of expenses of administration, charges for the last sickness and funeral of deceased, and debts having priority

under Code section 635.66. General claims against the estate would necessarily be paid out of the real estate.

■ Title to the real estate passed instantly on the death of the intestate to the statutory distributees—the minors and Mrs. Conklin—subject to defeasance or diminution in the payment of valid and subsisting obligations of the estate, or other proper administration needs. We have repeatedly so held. Moore v. Gordon, 24 Iowa 158, 161, 162; In re Estate of Cooper, 229 Iowa 921, 925, 926, 295 N. W. 448; Reichard v. Chicago, B. & Q. R. Co., 231 Iowa 563, 578–582, 1 N. W. 2d 721; In re Estate of Ferris, 234 Iowa 960, 978, 979, 14 N. W. 2d 889; In re Estate of Schwertley, 228 Iowa 1209, 1215, 293 N. W. 445 (and citations noted in these cases); chapter 636, Code of 1946; 21 Am. Jur., Executors and Administrators, sections 286–289; 33 C. J. S., Executors and Administrators, 1262, section 252a: "Subject to certain exceptions, as a general rule an executor or administrator has no interest in, title to, or control over the realty of his decedent." It descends to distributees or devisees *eo instante* upon the death of the ancestor with the share of each definitely ascertained, subject only to the right of the administrator or executor to resort thereto for payment of the obligations of the estate upon proper showing that the personalty is inadequate for that purpose. Until that occurs those taking by statute or by will may occupy, use and control the real estate or sell it subject to its being taken for said administration needs. The title and possession so acquired by each distributee or devisee is subject to this contingency alone. Herriott v. Potter, 115 Iowa 648, 650, 651, 89 N. W. 91; In re Estate of Pitt, 153 Iowa 269, 272, 133 N. W. 660; Flora v. Brown, 159 Iowa 253, 255, 140 N. W. 364.

■ II. The property interest of the minors rightfully entitled them to intervene in the action by their guardian. Their guardian ad litem had the same right. Section 638.37, Code of 1946. The claim of claimant in the proceeding before us was tried to the court under section 635.59, Code of 1946, which provides that "all provisions of law applicable to an ordinary action shall apply." While we have held in McCurdy v. Gilleland, 236 Iowa 362, 372, 17 N. W. 2d 829, and in State v. One Certain

Automobile, 237 Iowa 1024–1031, 23 N. W. 2d 847, that Division IV of the Iowa Rules of Civil Procedure had no application to the specific matters under consideration in those cases, we held and said in In re Estate of Hermence, 235 Iowa 745, 748, 749, 15 N. W. 2d 905, 907:

"It should not be assumed from our holding that Rule 177 does not apply to will contests that none of the rules applies even indirectly to such a contest. * * * However, the actual trial of a will contest is by ordinary proceedings, in the same manner as an action at law. * * * The rules, of course, apply to the trial of actions both by ordinary and equitable proceedings. And insofar as the rules apply to trials by ordinary proceedings they affect indirectly the trial of a will contest. That is, the rules make certain changes in the trial of actions at law (and also those in equity). Will contests are triable as actions at law according to the procedure now applicable to such trials. Such procedure is governed by the rules, together with the statutes not affected thereby."

No section in Title XXXII (Probate) of the 1946 Code is listed as a statute having no force and effect in Appendix I of the Rules of Civil Procedure. Intervention, when proper, has always been permitted in actions to establish claims against estates. We find nothing to the contrary in the Rules of Civil Procedure. And Rules 68 and 75 expressly authorize intervention. In In re Estate of Davenport, 85 Iowa 293, 295, 296, 52 N. W. 197, 198, the administrator of the estate of a deceased incompetent son of the deceased, who was also administrator of the deceased parent's estate, filed a claim against the parent's estate for a debt owing the son and other claims against the parent's estate which had been allowed against the son's estate. A special administrator of the parent's estate was appointed who allowed all of these claims and secured the court's approval, apparently without any hearing. Eleven days later, but in the same term of court, two heirs of the parent filed motions supported by affidavits which on their face showed a valid defense to the claims. Counter-affidavits were filed in resistance, and on such hearing the allowances were set aside and set down for

further hearing. In affirming the ruling on appeal, this court said:

"While it is true that the heirs are not required to be made parties to proceedings for the approval or disapproval of claims, yet it is certainly true that where they have an interest in the result, as these appellees have, and it is alleged that the administrator is failing or has failed to make existing valid defenses, the heirs shall be permitted to intervene and make such defenses."

In Milburn v. East, 128 Iowa 101, 106, 102 N. W. 1116, 1118, a proceeding in probate to sell real estate to pay debts, the court said:

"\* \* \* the persons entitled to share in the distribution of personalty, and who are by our rules of descent the persons who inherit the real property, are not necessary parties to the proceeding for the allowance of claims. *They may by proper steps resist the allowance, and the same opportunity is open to them, so far as it may be anticipated that such claims may subsequently be enforced against the real estate. Perhaps it may be said that as to the distribution of the personal estate they are directly represented by the administrator, but that as to the liability of the real estate there is no such representation.*" (Italics added.)

In In re Estate of Jackson, 225 Iowa 359, 280 N. W. 563, the administrator pleaded the bar of statutory limitation, and the defendants, as heirs, interposed the same plea.

It is a sound and ancient principle that when an executor or administrator standing as he does in the position of a trustee to an heir of the deceased refuses to speak in his behalf, the heir has a sacred right to speak for himself.

In the old English case of Tebbs v. Carpenter, 1 Maddock 290, 298, in an administration action, a creditor made application to prove a debt barred by the statute of limitations. The executor refused to interpose the statute. The plaintiff, a residuary legatee, pleaded the bar of the statute. The Master of the Rolls held that it was competent for him, or any other person interested in the fund, to take advantage of the statute

before the Master, notwithstanding the refusal of the executor. Upon appeal this decision was confirmed by Lord Chancellor Brougham.

Neither the claimant nor the trial court in the case at bar cited any authority holding either expressly or by fair inference that the guardian or the guardian ad litem had no right to plead the statute of limitations.

It is stated in 34 C. J. S., Executors and Administrators, 133, section 382e: "Ordinarily creditors, heirs and devisees, and the state claiming by escheat may interpose the bar of limitations against a claim irrespective of waiver by the executor or administrator."

But in addition to the guardian's right as a matter of law to intervene, it was stipulated by and between the claimant, administrator, guardian, and the guardian ad litem, that the two last mentioned might intervene and defend against the claim and make all objections deemed proper by the intervenors. The court accepted and approved the stipulation. Intervenors filed answer and objections, which were not attacked, and trial was had upon the merits on the claim and answer, and the defense alleging the bar of the statute of limitations against the claim was established conclusively.

III. The trial court's first conclusion of law states that an administrator is not legally bound to plead the statute of limitations as against a claim he believes to be just and unpaid. Cited as the authority therefor is In re Estate of Baumhover, 151 Iowa 146, 130 N. W. 817. The opinion in the report gives too little information to properly appraise the decision, and the printed record is not definitely informative on the important fact issue of whether the money used to pay the outlawed claims was realized from personalty or realty. A fair inference from what is shown is that the payments were made from the sale of personal property or in the operation of a farm and mill. The record does not disclose that any real estate was sold to pay debts. The deceased died intestate July 25, 1904, leaving surviving, his widow, several children, and one or more stepchildren. By family agreement the sons, Herman and Lambert, were appointed administrators on September 26, 1904, and as

such for four or five years continued the operation of the farm and the milling business. On April 7, 1910, they filed the final report of their doings in the estate since October 5, 1908, the date of their last report. The report showed that since the last report over $36,000 had been received, and over $32,000 had been disbursed, of which over $20,000 were paid out in conducting the business. It was shown in the report that the administrators in October 1905 had paid the claims of a son and daughter and step-son amounting to over $2300, and in April 1907 the sum of $356. These claims were largely for services rendered in the home of the parents after claimants had reached their majority. They were not evidenced in writing and the statutory period of limitations against all claims had expired from ten to twenty years before decedent's death. Four sons and daughters of the deceased promptly filed objections to the report in which the bar of the statute of limitations was raised. The objections were overruled, and the ruling was affirmed, and this court held that the administrators were not necessarily bound to interpose the plea of the statute of limitations against claims which they believed were justly due. Such holding at that time was in line with the minority of the courts. Since that time the number of courts holding the majority and contrary view has greatly increased, largely through the adoption of statutes that executors and administrators, and even courts, are prohibited from allowing claims against which statutes of limitation had run prior to the death of the deceased. In 2 Woerner, American Law of Administration, Third Ed., published in 1923, section 401, pages 1321, 1322, it is stated:

"The rule requiring executors and administrators to invoke the bar of the Statute of Nonclaim whenever it is applicable, is not so imperative in respect of the general Statute of Limitations, of which Lord Hardwicke said that no executor was compellable, either at law or in equity, to take advantage against a demand otherwise well founded. This remark is relied on in several American States as a correct statement of the law, and the principle is generally recognized in the absence of statutory regulation of the subject. But in a large and growing number of States, generally by statutory provision, the executor or ad-

ministrator is bound to set up the bar of limitation, and where the personal assets in the administrator's hands are insufficient to pay the debts, so that it becomes necessary to resort to the real estate for this purpose, he is not allowed, in some States, to waive the bar of the general statute, or the heirs entitled to the real estate may plead it if he does not. * * * [Page 1325] In a number of States the statute prohibits the allowance of claims barred by the Statute of Limitations; it is so provided, or held by the court, that the bar of limitation must be interposed, for instance, in Arizona, Arkansas, California, Connecticut, Florida, Idaho, Michigan, Minnesota, Montana, Nebraska, Nevada, New York, North Dakota, Oregon, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming."

In 34 C. J. S., Executors and Administrators, 128, section 382a (In General), it is stated: "Ordinarily an executor or administrator should not pay claims barred by limitations or laches prior to his decedent's death." In the footnote are late decisions supporting the text from various states, among which are the following not included in the list of Woerner, supra: Colorado (statute), Illinois, Kentucky, Mississippi, Oklahoma, Pennsylvania, Indiana, New Mexico (statute). No cases are cited which hold to the contrary. In the Fourth and Fifth Decennial Digests under Executors and Administrators, Key No. 213, are many other decisions like those above from many states including also Kansas and Missouri, not noted above. See also Thompson v. Peter, 12 Wheat. (U. S.) 565, 6 L. Ed. 730.

The fact that the barred claim is a just one or may have the sanction of some moral obligation should not exempt it from the statute. The law does not enforce purely moral obligations, and statutes of limitation, ordinarily, apply to all debts whether just or less worthy. They do not pay or nullify the debt, and in the forum of conscience it may always be a subsisting obligation, but the statutes do prevent the enforcement of recovery. They were once the objects of animadversion and may not now be objects of favor, but the public policy of every state has demanded their enactment as statutes of repose and protection. The estates of the dead have greater need for them

than do the living. As said in Abbott v. Johnston, 130 Ark. 1, 8, 195 S. W. 676, 678:

"There is no suggestion in the record of lack of merit in the claim of appellee except that the enforcement of his lien is barred by the statute of limitations. The statutes on that subject apply with full force to the most meritorious claims, and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a case involving an obviously meritorious claim."

Of similar import is the language in State ex rel. Steinfort v. District Court, 111 Mont. 216, 222, 107 P. 2d 890, 893: "The courts have recognized the fact that these are matters for legislative determination and have not tried to usurp the legislative functions by overruling the statutes even in case of hardship; for every non-claim or limitation statute is a hardship upon those barred by it." In Halliburton v. Carson, 100 N. C. 99, 107, 5 S. E. 912, 915, 6 Am. St. Rep. 565, the court, in sustaining the waiver of the statute by the personal representative, said that to do otherwise would "make the deceased sin in his grave." The reason given is more sentimental than sound. The reason commonly given in support of the contention of claimant is that the representative of the deceased should be permitted to do what the deceased might have done. In answer to the same argument where the statute was sought to be avoided by promises of the administrator, Chief Justice Marshall, in Thompson v. Peter, supra, 12 Wheat. (U. S.) 565, 566, 6 L. Ed. 730, 731, said: "But this is not a suit against the original debtor. It is brought against his representative * * *. Declarations against him have never been held to take the promise of a testator or intestate out of the act. Indeed, the contrary has been held."

Of like contention, the court in Dern v. Olsen, 18 Idaho 358, 370, 110 P. 164, 168, L. R. A. 1915B 1016, 1035, Ann. Cas. 1912A 1, 5, said:

"The acknowledgment of a debt or liability under this provision of the statute [one requiring written acknowledgment of a debt] so as to take it out of the operation of the statute of limitation appeals to the conscience and sense of fair dealing

of the debtor. After he is dead, his legal representative is purely and solely a legal representative of the estate and not of the person of the deceased. He is purely a business representative, and in no way can represent the conscience or sense of equity and justice of the deceased debtor. When the debtor dies the power and authority to waive the bar of the statute of limitations dies with him, and the conscience and sense of fair dealing to which this statute appeals thereupon loses the medium of expression and action to take the obligation out of the operation of the statute of limitations."

In Reay v. Heazelton, 128 Cal. 335, 338, 60 P. 977, 978, the court said: "As between parties acting in their own right, the plea of the statute of limitations is unquestionably a personal privilege which may be waived. But an executor or administrator, acting for others, and in a trust capacity, is not vested with this privilege, and may not waive such a defense."

This court has repeatedly recognized and held that an executor or administrator is a trustee acting in a fiduciary relation, respectively, between the creditors of the estate of the deceased and the devisees and legatees, and between the creditors and distributees. Blackman v. Baxter, Reed & Co., 125 Iowa 118, 120, 121, 100 N. W. 75, 70 L. R. A. 250, 2 Ann. Cas. 707; In re Estate of Chismore, 194 Iowa 300, 304, 189 N. W. 770; In re Estate of Willenbrock, supra, 228 Iowa 234, 239, 240, 290 N. W. 502; Jennings v. Schmitz, 237 Iowa 580, 588, 20 N. W. 2d 897; Reichard v. Chicago, B. & Q. R. Co., supra, 231 Iowa 563, 580, 1 N. W. 2d 721. As such impartial trustee it is his duty to collect and conserve the assets of the estate, and to resist any wrongful or unenforceable claims against it, for the benefit and protection of the creditors and the distributees or devisees who stand upon their strict legal rights. Any unjustified preference or favor to one creditor injures every other creditor and every distributee or devisee.

IV. The case of In re Estate of Baumhover, supra, 151 Iowa 146, 130 N. W. 817, on the point herein discussed, has been cited three times by this court. The first time was in In re Estate of Sterner, 224 Iowa 605, 615, 616, 277 N. W. 366, which involved a number of propositions, the pertinent one

being the attempt of a creditor of the estate to set aside a judgment of the court allowing a claim of a sister of the administrator after contest by the latter and his attorney. It was a final adjudication from which no appeal had been taken. It would be set aside only by establishing fraud or collusion in *procuring* the allowance of the claim, thus perpetrating fraud upon the court. The claim, based upon three promissory notes, showed on its face that all the notes were barred by the statute of limitation, of which fact the court was fully informed. The trial court rightly held that this fact, and the fact that her brother, the deposed administrator c.t.a., testified in her behalf, did not establish fraud on the court. This court affirmed. The estate consisted of real and personal property all of which was devised to the brother and sister except the homestead and a life estate in the remaining property. No issue was raised as to what property the claim would be paid from.

The second time the Baumhover case was cited on the questioned point was in In re Estate of Jackson, supra, 225 Iowa 359, 280 N. W. 563. In that case it appears that the deceased died intestate, and on February 27, 1925, Fred Jackson was appointed administrator, and the first notice of the appointment was published on March 5, 1925. On October 24, 1925, the Turin Savings Bank filed a claim against the estate for $3400. Not having been filed within six months from the first publication of the notice it was a claim of the fourth class. No notice of hearing on the claim was given within twelve months from said publication date, nor was the claim allowed by the administrator, clerk, or court within that period. Subsequent payments on the claim by the administrator reduced it to $1150, when the bank was closed on March 30, 1930.

The deceased owned one hundred seventy acres of land at his death which descended to the defendants, as heirs of the deceased. One Wright held a $2000 mortgage on this land, on which he began foreclosure in January 1933 against the administrator and the heirs. On March 1, 1933, prior to decree, by stipulation, plaintiff was permitted to take judgment and decree immediately and have execution sale, providing defendants might have until March 1, 1936 to redeem. Wright bid

in the land for the full amount of $2431.21, and on September 25, 1935, he had been paid down to $552.05. In October 1933, Roe, the intervenor herein, purchased the remaining assets of the defunct Turin bank, including the sheriff's certificate with its unpaid balance of $552.05, which amount was paid to the clerk of court in full redemption on February 27, 1936. During the more than ten years since the bank claim had been filed the defendant heirs had improved the land, and some heirs had sold their interests to the others.

In October 1935, Roe applied for a citation to the administrator requiring him to sell the said land to pay the balance owing on the bank claim. Jackson resigned as administrator and Frazier was appointed in his stead, as administrator de bonis non. He resisted the citation by answer containing in substance the same defenses, later alleged by the heirs in resistance to the application to sell the real estate. A hearing was had in the citation proceeding to which the heirs were not parties, and the court on June 16, 1946 ordered the administrator to sell the real estate to pay the bank claim then owned by Roe. In compliance with the order, the administrator in November 1936 filed his petition to sell the real estate to pay the said claim of about $1200. Defendants, heirs of decedent, filed resistance to the petition alleging that the claim of the bank was barred by the special statute of limitations, section 11972, Code of 1924 (635.68, Code of 1946), in that the notice of hearing provided therein had never been given; that Jackson, the administrator, had never approved the claim during the twelve-month period; that ten years had elapsed since the filing of the claim and the application to sell; that full redemption had been made from the special execution sale; that extensive improvements had been made on the land, and that they had no knowledge that the bank or the intervenor ever claimed any interest in the land.

Roe intervened in the proceedings and joined with the administrator in asking for the sale. He also alleged that the order of the court in the citation proceeding was an adjudication against the heirs that the land was subject to sale for the payment of his claim. He also alleged collusion between the heirs

and the administrator, and other matters which he insisted excused any delay with respect to the claim.

The trial court found for the intervenor and ordered the land sold to pay his claim. In reversing, and speaking of the defenses of the intervenor, above noted, this court said, on page 367 of 225 Iowa, page 567 of 280 N. W.:

"We do not agree with this contention. The real estate vested in the heirs subject to the right of the administrator to subject the real estate to the payment of debts under the provision of Code sections 11933, 11935, and 11937 [Code of 1935], which provide an exclusive procedure and method for divesting the heirs of their title. * * * The real estate of the defendants is not subject to sale for the purpose of paying the claim of the intervenor and the case is reversed."

With respect to the defending heirs' right to interpose the defense of the statute of limitation, the court, on page 366, said:

"While in this state we have held that an administrator is not necessarily bound to interpose a plea of the statute of limitations against a claim which he believes justly due from the estate, and may, in good faith, pay such claim from personal property in his hands as administrator (see In re Estate of Baumhover, 151 Iowa 146, 130 N. W. 817), *such waiver of the statute will not affect the right of the heirs to invoke the statute when the administrator brings an adverse proceeding against them to sell their real estate for the benefit of creditors.* Authority of the administrator over real estate must be derived through compliance with Code sections 11933, 11935, and 11937, hereinafter referred to, *and he is without power to bind the heirs by his payments or to impair the defenses of the heirs in the action to divest them of their title by the proceeding to sell real estate.* 24 C. J. 303, sec. 919; Herrick and Doxsee (3d Ed.) vol. 1, page 444." (Italics added.)

In distinguishing the holding in the Baumhover case as not applicable to the facts in the case of In re Estate of Jackson, supra, by deciding therein that the waiver by an executor or administrator of a statute of limitations against a claim filed was not binding on the distributees or devisees, and did not

make their real estate liable or subject to the payment of the claim, this court followed a principle of law that has been, and is, uniformly recognized and followed by all courts.

In 11 Am. & Eng. Ency. of Law, Second Ed., 921, section 10 (3), it is stated:

"Waiver Not Binding on Realty or Heirs. If the personal estate of the decedent is not sufficient to pay all the debts, the personal representative cannot waive the statute so as to render the real estate subject to the payment of the claim, or affect in any way the right of the heirs to the benefit of the statute." And in the same volume on pages 1080, 1081, it is said: "The power of an executor or administrator to waive the bar of the statute of limitations as to claims against the estate which are otherwise justly due is limited to cases where the creditors seek satisfaction of their claims out of the personalty, but no power exists to waive the bar of the statute so as to affect the rights of the decedent's heirs; and therefore a sale of real estate cannot be ordered to pay debts that are barred, and it is immaterial whether the case is within the general or special statutes of limitations. *And if the statute is not pleaded by the executor or administrator, the heir or any other person having an interest in the property may plead it.*" (Italics added.)

In 34 C. J. S., Executors and Administrators, 133, 134, section 382e, is this statement:

"An heir or devisee may interpose the statute of limitations against a claim sought to be enforced against the real estate descended or devised, and, since the personal representative has no power or control over the real estate, his failure to interpose the statute of limitations to a creditor's claim can have no effect to subject the real estate to the creditor's demand and cannot prevent the heir or devisee from invoking the statute. Neither an executor nor an administrator may allow a claim against an estate which is barred by limitations and bind the heirs for the payment thereof, and the representative's acknowledgment of the debt or his promise to pay it does not bind the real estate belonging to the heirs or devisees or affect their right to plead

the statute, and the same is true of a part payment by the representative * * *."

See also 34 C. J. S., Executors and Administrators, 529, section 570d; and section 539, page 477, in the same volume, where it is stated: "A license or order should not be granted to sell lands of decedent for the payment of debts already barred by the statutes of limitations or nonclaim or for the reimbursement of a representative who has paid such claim."

In 21 Am. Jur., Executors and Administrators, 705, section 577, is the following:

"The sale of a decedent's real estate for the payment of his debts must be inaugurated within the period of the statute of limitations; otherwise, the sale will not be valid, even though the order was obtained in due time, *the existence of a valid debt not barred by limitations being a jurisdictional fact.*" (Italics added.) In the same volume, page 620, section 418, it is stated "The heirs are entitled, as against creditors seeking to charge the real estate, to plead the statute or any other lawful defense, unaffected by the act or admission of the executor."

See also annotation L. R. A. 1915B 1049; Ann. Cas. 1912A 22.

The general principle is again stated in 34 C. J. S., Executors and Administrators, 476, section 539a: "In order to authorize a sale of decedent's land to pay debts, the existence of valid and *legally enforceable* debts of the estate must be shown." (Italics added.)

The rule of law stated in the quotations above noted is followed not only in those jurisdictions which hold that any waiver of, or failure to interpose, the bar of limitation statutes by an executor or administrator as against the personal assets of the estate does not bind the distributee or devisee, but it is also the rule of those jurisdictions which hold to the contrary. In other words, courts, almost without exception, hold that the representative of the estate by failure to interpose the bar of a statute of limitation to a filed claim cannot subject the real estate of the distributee or devisee to the payment of such claim, nor prevent them from setting up the defense of the bar.

In Ex Parte Perryman, 25 Ala. 79, 80, 60 Am. Dec. 494, the administrator refused to plead the statute. The court denied the daughter of the intestate permission to make the plea, saying: "We know of no rule of law, which would authorize the distributees, in a suit against the administrator, to come into a court of law, thrust the real parties aside, and take the management of the cause." But in Pollard v. Scears Admr., 28 Ala. 484, 487, 65 Am. Dec. 364, 365, the court said:

"An administrator who has personal assets in value sufficient to pay the debts of his intestate is not bound to plead the statute of limitations [citing the Perryman case] * * *. When a resort to the realty is necessary, to raise a fund to pay the debts, a different rule, for an obvious reason, prevails.—Bond v. Smith, 2 Ala. 660."

In the cited case (Bond v. Smith) in defeating an attempt to satisfy a barred claim out of the heirs' land, the court said on page 663:

"It is true, that while acting within his appropriate sphere, as the representative of the deceased, he may decline to interpose the bar of the statute to defeat a just claim; but when he lays down his character of representative of the deceased, and becomes a party litigant on behalf of the creditors, against the heirs, it would be a strange anomaly if he should be allowed to dictate the defense."

See also Taylor v. Crook, 136 Ala. 354, 34 So. 905, 96 Am. St. Rep. 26; Steele v. Steele's Admr., 64 Ala. 438, 38 Am. Rep. 15; Warren v. Hearne, 82 Ala. 554, 2 So. 491; Elliott v. First Nat. Bk., 248 Ala. 360, 27 So. 2d 623.

Other courts which have held the waiver of the statutory bar permissible with respect to the personalty hold to the contrary as against the real estate of the distributees or devisees. These states are Massachusetts, North Carolina, Maine, New Hampshire and Maryland. The citations may be found in 11 Am. & Eng. Ency. of Law, Second Ed., 1081. In Divine v. Miller, 70 S. C. 225, 49 S. E. 479, 480, 106 Am. St. Rep. 743, the court in rejecting an attempt to subject the real estate of

an heir to the payment of a barred debt which the executrix had revived, referred to a like unsuccessful attempt in Gibson v. Lowndes, 28 S. C. 285, 301, 5 S. E. 727, 732, wherein the court said:

"Without stopping to inquire whether a payment by an executor upon the bond of his testator will *ipso facto* arrest the presumption of payment * * * it may be enough to say that 'no acknowledgment or admission by an executor or administrator will bind the real assets in the hands of the heir or devisee.' As Chancellor Kent significantly asks: 'Is the heir to be charged at the pleasure of the executor with the debts of the ancestor? Does it rest entirely in the discretion of the executor whether the heir is or is not to be permitted to use the statute of limitations?' * * * Mooers v. White, 6 Johns. Ch. [N. Y.] 373."

In the cited case the eminent Chancellor also said at page 388: "* * * when the persons interested in the real estate appear before the judge or surrogate, with their allegations and proofs, they are entitled to raise the same objections to the creditor's demand, which they might have [raised] if they had been [legally] sued; and that they may of course, interpose the statute of limitations. The justice and reasonableness of this proposition are so exceedingly clear, that I cannot regard it as susceptible of doubt."

This case before us is ruled by the decision in In re Estate of Jackson, supra, 225 Iowa 359, 280 N. W. 563, and the wealth of authority which sustains it. The two cases are *"quattuor pedibus"*—on all fours. The only difference being that in the Jackson case it was the bar of a special statute of limitations which the trial court refused to recognize, while in the case at bar it was the general statute of limitations which the court held the intervenors could not interpose.

V. Under section 635.23, Code of 1946, the real estate can be resorted to for payment of debts only in the event of the inadequacy of the personal property to satisfy them, and only after a full statement of all claims filed, and an accounting of the disposition of the personal property, to the court. So that

as against an heir or devisee, his land cannot be sold by an administrator to pay debts "unless there exists at the time of the sale a valid, legal subsisting demand against the [estate]." 21 Am. Jur., Executors and Administrators, 703, section 574. As stated in 34 C. J. S. 476, supra, the debts must be "legally enforceable." It was held in State ex rel. Craft v. Williams, 131 Ala. 56, 30 So. 782, 90 Am. St. Rep. 17, that where the statute of limitations had run against the debt it is not a subsisting demand.

▇▇▇ VI. The court erred in its conclusion of law that an heir cannot appear in resistance to the allowance of a claim against the estate of a decedent, except where the personal representative holds the claim, for which conclusion McDermott v. Estate of McDermott, 138 Iowa 351, 116 N. W. 122, was cited. The decision in the case is, in fact, authority to the contrary. The personal representative, who has a debt against the estate, has the same right to be paid as any other claimant, except a temporary administrator must act in reference to such a claim (section 3346, Code of 1897, section 635.64, Code of 1946). In the cited case such a special administrator was appointed and he reported in favor of the claim's allowance. The fact that the regular administrator owned the claim had nothing to do with the disallowance. He was simply one among the claimants. In re Estate of Miller, 169 Iowa 24, 27, 149 N. W. 227, 228, L. R. A. 1915C 736, the court said:

"It will be noted that in the establishment of such claim in his own behalf the claimant, though administrator of the estate, was not acting as such. As to his claim he could not act as such. In the prosecution of such claim, therefore, he sustained no relation of trust to the estate. *He stood toward the estate precisely as any other third party who was making a claim against it.*" (Italics added.)

In the McDermott case, promptly after the allowance of the claim was recommended by the special administrator, a daughter of the intestate—having the same status as the Liechti minors in the case at bar—filed a resistance pleading the special statute of limitations against the claim. The claim was then amended

alleging equitable circumstances excusing the delay. A hearing was had on that issue and the court rendered judgment rejecting the claim because 'it was barred by the special statute of limitations.

In this court the claimant, as appellant, urged that the allowance of a claim by an administrator was final in the absence of a showing of misconduct or fraud on the part of claimant. The court rightly ruled against him and held that such an allowance was not a final adjudication, but was open to attack by anyone interested, on any legitimate ground, and that the necessity for showing misconduct or fraud applied only to a proceeding to set aside a judgment rendered after a trial to the court. It is true that the court made this statement: "And, where the executor or administrator holds a claim against the estate for which he is acting, an heir may question the validity thereof. He is interested in the settlement of the estate, and the claim of the administrator is adverse to his interest. In re Davenport's Estate, 85 Iowa 293." 138 Iowa, page 353, 116 N. W., page 122. There was no necessity for such a statement unless there was some challenge to the daughter's right to resist the claim. The opinion discloses no such challenge. Insofar as the language may be the basis for any inference that the resister's right to intervene or object was based upon the fact that claimant was the administrator, we hold that the language was inadvertent, and such meaning was not intended.

The opinion also states: "There is no merit in the contention that the statute of limitations was pleaded too late. The issue was presented and accepted by the plaintiff before final trial, and seems to have been tried without any objection on the part of the plaintiff."

The decision does not support the contention of the claimant or the conclusion of the trial court. It appears that an heir was permitted to resist on the ground that the claim was barred by a statute of limitations. Whatever pertinent authority the opinion has favors the intervenors.

VII. In the same conclusion of law discussed in the division just above the court stated that an heir cannot appear in resistance to the allowance of a claim unless his objections

are based on fraud or collusion, and cited as authority therefor In re Estate of Douglas, 140 Iowa 603, 117 N. W. 982. In our judgment the opinion does not so hold. The defendant, ·claimant-appellant, was the administrator of his wife's estate, which he claimed was indebted to him in a large sum. His claim was presented to a special administrator, allowed by him, and approved by the court in September 1903, apparently without any hearing or trial. In June 1905, the special administrator filed his final report on the claim and asked for his discharge. Pending a hearing thereon, the appellees in October 1905 filed objections to the report based on many grounds, among which were fraud and the statute of limitations. The opinion does not disclose whether the appellees were creditors or distributees. In April 1907 the objections were amended, and claimant moved to strike them. This motion was overruled and the application to set aside the allowance was granted. At this time the claim had not been paid nor had final settlement with the regular administrator been made. In affirming, this court apparently construed the ruling of the trial court as based on section 3398 of the Code of 1897 (section 638.9, Code of 1946), which section and its predecessors the court has construed as including both mistakes and fraudulent acts of administrators. McLeary v. Doran, 79 Iowa 210, 214, 44 N. W. 360 (section 2474, Code of 1873, now 638.9, Code of 1946). This court has also construed a claim, allowed and approved as this claim was, as one subject to review at any time before final settlement of the estate. Such ex parte orders or allowances have no greater force than that they are prima facie correct. They may be challenged by any person adversely interested for any good reason or sound ground. In re Estate of Nicholson, 230 Iowa 1191, 1207–1209, .300 N. W. 332; Soppe v. Soppe, 232 Iowa 1293, 1296, 8 N. W. 2d 243. The only language in the opinion in the Douglas case on which the court could have based its conclusion is: "That parties having an interest in the estate may contest the allowance of a claim on the ground of fraud and collusion is well settled. In re Estate of Davenport, 85 Iowa 293." 140 Iowa, page 606, 117 N. W., page 983. This statement, of course, is not a holding that a claim allowed by the administrator and approved by the court,

ex parte, without a trial, as done in the Douglas case, cannot be attacked or set aside for grounds other than fraud or collusion. And it most certainly does not mean that in the initial hearing for the allowance of a claim, as was had in the case at bar, a creditor, devisee, distributee or other person interested adversely to the claimant cannot base his objections upon the statute of limitations, mistake, payment or other good grounds, but must limit his complaint to the grounds of fraud or collusion. The case cited by the court does not so hold. The claimant has cited none that does. We have found none holding such a proposition.

 VIII. The court found as a fact, and also concluded as a matter of law that since the administrator in his application to sell the real estate stated that he anticipated a claim for $4000 would be filed against the estate, and the order for the sale referred to the anticipated claim, and the intervenors were parties to said proceeding and made no objection to the anticipated claim, which was in no way identified as the claim involved herein, the intervenors in the proceeding here involved could not be heard to urge that the claim be not charged against the real estate or its sale proceeds, because that issue had previously been determined and adjudicated against them in the hearing on the application to sell real estate.

Let us consider the proposition. The application to sell real estate was filed May 25, 1946, shortly after decedent's death. The order for the sale was entered July 6, 1946. The claim of the claimant had not been filed when the above matters took place. It was not filed until September 16, 1946. There was nothing in the application to sell or in the court's order to sell that would give the intervenors or his wards or anyone else who might see the application or order, any notice or knowledge as to the nature of this $4000 debt, of its date or its maturity, or of the name or whereabouts of the person owning the obligation, or whether it was barred by the statute of limitations. The court did not find that the minors or their guardian had this information, and there was no evidence on which such a finding could be based. But it found, or rather inferred, that the wards or their guardian could have required identification of

the claimant if they "had any doubt relative thereto." They were not called upon or required to doubt the honesty of the administrator or to question the correctness of his application. They might rightly presume upon his good faith. They were not dealing at arms length. He was acting in the capacity of trustee. If he had any information about the claim which they should have known, it was his duty to inform them. As Chief Justice Cardozo said in Meinhard v. Salmon, 249 N. Y. 458, 464, 164 N. E. 545, 546, 62 A. L. R. 1, 5: "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." They had no reason to suspect that he would charge against their land a debt that was barred by statutory limitations. It was evident to everyone that the land would have to be sold to pay the debts. The application to sell was a proper and necessary proceeding. The land was security for part of the indebtedness, and was subject to sale for other valid unsecured debts. A general attack on the application would not have been good, and the guardian had no good reason to believe there was any claim subject to specific attack.

Even when the claim was filed over two months after the order of sale it gave no information as to the date of the transaction or the maturity of the debt or whether it was evidenced in writing. After intervenors filed the motion that indefinite claims be made more specific, the claim was amended on April 24, 1947, to make it appear that the debt was a part of an open, running account. It was then that the tripartite agreement was made by the parties, and accepted and approved by the court for a hearing upon the allowance of this disputed claim. No one at that time was claiming that such hearing was not necessary, for the reason that it already had been adjudicated as a proper charge against the real estate at the time the order to sell was made. The administrator made no such claim, and neither did the claimant, the guardian nor the court. If the matter was res judicata, why were the parties put to the needless and futile burden of another hearing to establish the claim?

It may be conceded that unfiled claims may be included and considered in an application for a hearing to sell real estate

to pay debts. In re Estate of Oelwein, 217 Iowa 1137, 1140, 251 N. W. 694. And in Soppe v. Soppe, supra, 232 Iowa 1293, 8 N. W. 2d 243, we held that an order of sale on an application *definitely describing* a claim constituted an adjudication of its validity. But there was no such description in this case. How can it be fairly said that a claim was so adjudicated when there was no one named as creditor? Before a claim can be allowed there must be a definite person named as creditor to whom it may be allowed. In addition there is the testimony of the attorney for the administrator, who prepared the application, that in referring to the $4000 claim the administrator had no intention of stating that it was a valid or an invalid claim. There was no basis for the finding of fact or the conclusion of law that the claim of claimant was adjudicated in the hearing on the application to sell the real estate, and that because thereof the intervenors had no right to interpose the bar of the statute of limitations.

The record is such that under Rule 349, Rules of Civil Procedure, the judgment might well be reversed and remanded for judgment in favor of the intervenors denying the allowance of the claim, but it may better serve the ends of justice to simply reverse the judgment of the district court.

It is so ordered.—Reversed.

GARFIELD, HALE, HAYS, MULRONEY, OLIVER, SMITH, and WENNERSTRUM, JJ., concur.