**Howard NOEL, Appellee,**

v.

**Sylvester UTHE et al., Appellants.**

**Sylvester UTHE, Cross-Petitioner-Appellant,**

v.

**Alvin Madora TEHLE, Pauline Tehle, Bertha Myers, Warren Myers, Carrie Brereton, Alice R. McCowan, Howard Leslie McCowan, Margaret N. Olive, W. Edwin Long, Robert D. Pyle and Howard Noel, Defendants to Cross-Petition-Appellees.**

**No. 54316.**

Supreme Court of Iowa.

March 11, 1971.

Mahoney, Jordan & Statton, Boone, for appellant.

Hegland, Newbrough, Johnston & Brewer, Ames, for appellees Alvin Madora

Tehle, Pauline Tehle, Bertha Myers, Warren Myers, Carrie Brereton, Alice R. McCowan, Howard Leslie McCowan, Margaret N. Olive and W. Edwin Long.

Nelson & Vasey, Nevada, for appellee Robert D. Pyle.

MOORE, Chief Justice.

Cross-petitioner, Sylvester Uthe, appeals from the trial court's decree quieting title in described real estate contrary to his claimed interest. We affirm.

Lois Linebarger Tappan died testate in Knoxville, Tennessee on May 9, 1967. Her substantial assets included two Iowa farms, one in Dickinson and the other in Story County. The described 280 acre Story County farm, located just south of the Ames city limits, is the subject of this litigation.

The Hamilton National Bank, Knoxville, Tennessee was named and served as executor of the Tappan Estate. For purposes of Iowa ancillary administration First National Bank, Ames, Iowa was appointed and served as co-executor. Don Newbrough was retained as attorney for the ancillary estate.

The Iowa farms were left to the residuary beneficiaries, Mr. Alvin Madora Tehle, Pauline Tehle, Bertha Myers, Warren Myers, Carrie Brereton, Alice R. McCowan, Margaret N. Olive and Howard Noel. Most of them lived in the vicinity of Joliet, Illinois. All engaged attorney W. Edwin Long of Joliet to represent them. Howard Noel was designated as their spokesman. He and attorney Long visited the Iowa farms and the tenants thereon shortly after Mrs. Tappan's death. Sylvester Uthe had been a tenant on the Story County farm since 1947.

The Will gave discretionary powers to the named executor including "to sell all or any part of the property, of whatever kind and however acquired, belonging to my estate at such times, in such manner, and upon such terms as my Executor may decide. In the event my Executor shall determine that any real estate owned by me at the time of my death should be sold, I direct my Executor (or Ancillary Administrator), to give any tenant who has occupied such property determined to be sold for a period of five years, the right of first refusal to purchase same upon the same terms and conditions as the best offer received by and acceptable to my Executor therefor."

Soon after appointment the executor, Hamilton National Bank, determined the other estate assets were sufficient to cover debts, taxes, costs, specific bequest and other expenses so there was no reason or necessity for the executor to sell the land for any estate purpose. That remained the executor's position at all times thereafter. This decision was communicated by letter to First National Bank on September 17, 1967 and to Mr. Uthe by letter on October 9, 1967. Attorney Newbrough was so advised by letter on April 28, 1968 which stated: "The bank, as Executor, has taken the position that the real estate belongs to the residuary beneficiaries of Mrs. Tappan's Estate, and they are at liberty to sell this property or to retain the same. I believe that you should take this matter up with Mr. Long, their attorney."

Mr. Newbrough passed this information along to Mr. Long. Mr. Uthe was told to contact Mr. Long regarding his desire to purchase the Story County farm as was Robert D. Pyle, Ames accountant, who also had expressed a desire to purchase the farm.

On August 19, 1968 attorney Long sent identical letters on behalf of the residuary beneficiaries to Uthe and Pyle giving each an opportunity to make sealed bids upon the Story County farm stating the owners had the right to accept the best bid or refuse all bids up to September 23, 1968.

In response to the letters Pyle made an offer of $182,000 cash or $185,000 on contract reserving the right of prepayment.

Uthe made a cash bid of $184,000. Neither bid was accepted by September 23, 1968. Each bidder had further contact with Long regarding purchase of the farm. The inheritance tax appraisers fixed its value at $180,000.

On October 10, 1968 Pyle's $185,000 offer was accepted by a letter from Long. On the same date Long sent a letter to Uthe indicating the beneficiaries had refused his bid. Uthe's attorney then attempted to purchase from Pyle the north 120 acres of the farm for $700 per acre and stated if the offer was not accepted Uthe would offer the owners $200,000.

Pyle proceeded to obtain the signatures of all the beneficiaries and their spouses upon a real estate contract in accordance with his accepted offer. The contract was fully executed on October 25, 1968. It was prepared by Newbrough at Long's request.

After an unsuccessful effort to raise his offer Uthe on November 18, 1968 filed an affidavit in the Story County Recorder's office claiming that contrary to the provisions of Mrs. Tappan's will he was denied the right of first refusal to purchase the described Story County farm. Thus a title question was created as Uthe refused to honor the beneficiaries' request for a quit claim deed.

On May 15, 1969 this quiet title action was commenced by Howard Noel. Uthe and the other residuary beneficiaries were made parties. Uthe cross-petitioned and made Pyle and Long defendants to the cross-petition.

The trial court denied Uthe's claim and quieted title in the residuary beneficiaries subject to Pyle's contractual rights. This appeal involves the issues raised by Uthe's cross-petition.

I. Appellant Uthe's first assigned proposition for reversal is that the trial court erred in refusing his proposed amendment and application to make the Tappan Estate a party defendant. The estate was closed November 29, 1968. The court-approved final report of the executors included:

"Your applicants further state that the real estate described above located in Story County, Iowa was sold by the said residuary beneficiaries under contract dated October 25, 1968 to Robert D. Pyle, of Ames, Story County, Iowa."

Prior to 1963 the rule was well established that when a person died title to his real property passed instantly to the devisees under his will and in the absence of a will to the statutory distributees subject to defeasance or diminution in the payment of valid obligations of the estate, or other proper administration needs. In re Estate of Smith, 240 Iowa 499, 511, 36 N.W.2d 815, 822, and citations.

With some changes which are not relevant here the rule is codified in section 633.350, Code, 1966, which provides:

*"Title to decedent's estate—when property passes—possession and control thereof —liability for administration expenses, debts and family allowance.* Except as otherwise provided in this Code, when a person dies, the title to his property, real and personal, passes to the person to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in this Code, but all of his property shall be subject to the possession of the personal representative as provided in section 633.351 and to the control of the court for the purposes of administration, sale, or other disposition under the provisions of law, and such property, except homestead and other exempt property, shall be chargeable with the payment of debts and charges against his estate. There shall be no priority as between real and personal property, except as provided in this Code or by the will of the decedent."

Rule 25(a), Rules of Civil Procedure, provides all persons having a joint interest in any action should be joined as parties. Rule 25(b) provides: *"Definition of indis-*

*pensable party.* A party is indispensable if his interest is not severable, and his absence will prevent the court from rendering any judgment between the parties before it; or if notwithstanding his absence his interest would necessarily be inequitably affected by a judgment rendered between those before the court."

The Tappan Estate had been closed prior to the commencement of this quiet title action. The estate then had no interest in the Story County farm involved and was not an indispensable party to the quiet title action. Wright v. Standard Oil Co., 234 Iowa 1241, 1245, 15 N.W.2d 275, 277, and citations; 74 C.J.S. Quieting Title § 53; 44 Am.Jur., Quieting Title, section 77. The trial court did not err in denying Uthe's attempt to make the estate a party.

II. Under the terms of Mrs. Tappan's Will the five year tenant was given first choice to purchase "In the event my Executor shall determine that any real estate owned by me at the time of my death shall be sold." The Executor at all times rejected the idea of selling the Story County farm. Its final declaration in this regard is found in the final report which was approved by the court.

Uthe asserts the estate did in fact sell the farm to Pyle. He points out that Newbrough drew the contract and collected extraordinary fees for services rendered in regard to the sale. Newbrough did at Long's request assist in furnishing information to Uthe and Pyle but the evidence is clear the estate did not sell the farm.

During the entire proceedings relating to the negotiations and sale of the farm the resident and non-resident executors took no part in the negotiations. They did not participate in taking or considering bids. The $50,000 paid by Pyle on the purchase contract was made to the residuary beneficiaries and their attorney, Mr. Long. The negotiations of Pyle and Uthe were with Long and the residuary beneficiaries.

Our review which here is de novo (rule 334, R.C.P.) leads us to the same conclusions as reached by the trial court that the sale was by the residuary beneficiaries, the estate did not make the sale or ratify it and title should be quieted in the residuary beneficiaries subject only to the real estate contracts dated October 25, 1968 between the titleholders and Robert D. Pyle. Uthe's disappointment as a long time tenant and unsuccessful bidder is understandable. However the terms of the grant of first refusal to the tenant are inapplicable to the sale as made.

Appellant Uthe's assigned propositions have been considered and found to be without merit. We hold the decree entered by the trial court was proper.

Affirmed.

All Justices concur, except LARSON, J., who takes no part.